HILL MANUFACTURING COMPANY *vs.* PROVIDENCE AND NEW
YORK STEAMSHIP COMPANY.

. A loss of goods by fire on board the vessel upon which they are shipped, the fire happen-
ing by the neglect of the corporation owning the vessel, is not a loss incurred without
the privity or knowledge of the owners of the vessel, under the U. S. St. of 1851
c. 43, limiting the liability of ship-owners.

The jurisdiction of a state court over an action against a ship-owner for damage to goods by
a fire on board the vessel, happening by the alleged neglect of the ship-owner, cannot be
affected by subsequent proceedings instituted by the ship-owner in a federal court under
U. S. St. 1851, c. 43, and the rules of practice in admiralty.

Action in which the declaration contained a count in contract
alleging that the defendants were common carriers; that on May
22, 1868, the plaintiffs delivered to them 30 cases of unbleached
cotton cloth, containing 39,691 yards, of the value of $7000,
which they agreed to transport safely from Providence to New
York for a compensation agreed to be paid; that they did not
transport it safely, but that while being transported it was in-
jured by fire to the amount of $6000. A further count, in tort,
alleged that the defendants so carelessly and negligently con-
ducted themselves that the cloth was burned while being trans-
ported. Writ dated September 26, 1870.

The defendants in their answer, among other things not now
material, relied upon proceedings had in the District Court of
the United States for the Southern District of New York, under
the act of Congress of 1851, *c.* 43, entitled "An act to limit the
liability of ship-owners and for other purposes." *

---

* Section 1. "That no owner or owners of any ship or vessel shall be
. subject or liable to answer for or make good to any one or more person or per-
sons any loss or damage which may happen to any goods or merchandise what-
soever, which shall be shipped, taken in or put on board any such ship or
vessel, by reason or by means of any fire happening to or on board the said
ship or vessel, unless such fire is caused by the design or neglect of such owner
or owners."

Section 3. " That the liability of the owner or owners of any ship or ves-
sel, for any embezzlement, loss or destruction, by the master, officers, mari-
ners, passengers, or any other person or persons, of any property, goods or
merchandise, shipped or put on board of such ship or vessel, or for any loss,

At the trial in this court, before *Ames*, J., it appeared that the cotton cloth mentioned in the declaration was delivered at Lowell to the Boston & Lowell Railroad Company to be conveyed to New York, — by railroad to Providence, Rhode Island, and thence by the defendants' line of steamers; that it was delivered in Providence, to the defendants, May 23, 1868, and put on board their steamer the Oceanus; that the steamer sailed that afternoon, and arrived in New York the next morning, Sunday, but none of the cargo was discharged that day; that Sunday afternoon a fire, which originated in one of the defendants' buildings on the pier, burned the steamer to the water's edge, and destroyed or damaged the cloth and nearly the whole of her other cargo, which belonged to various shippers; that the defendants, having been sued in the present action, and other like actions having been brought against them, for injuries to the cargo, in New York and elsewhere, and desiring to contest their and the steamer's liability and to claim the benefit of the act of Congress, filed in

---

damage or injury by collision, or for any act, matter or thing, loss, damage or forfeiture, done, occasioned or incurred, without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner or owners respectively, in such ship or vessel, and her freight then pending."

SECTION 4. "That if any such embezzlement, loss or destruction shall be suffered by several freighters or owners of goods, wares or merchandise, or any property whatever, on the same voyage, and the whole value of the ship or vessel, and her freight for the voyage, shall not be sufficient to make compensation to each of them, they shall receive compensation from the owner or owners of the ship or vessel, in proportion to their respective losses; and for that purpose the said freighters and owners of the property, and the owner or owners of the ship or vessel, or any of them, may take the appropriate proceedings in any court, for the purpose of apportioning the sum for which the owner or owners of the ship or vessel may be liable amongst the parties entitled thereto. And it shall be deemed a sufficient compliance with the requirements of this act, on the part of such owner or owners, if he or they shall transfer his or their interest in such vessel and freight, for the benefit of such claimants, to a trustee, to be appointed by any court of competent jurisdiction, to act as such trustee for the person or persons who may prove to be legally entitled thereto, from and after which transfer, all claims and proceedings against the owner or owners shall cease."

the District Court of the United States for the Southern District of New York a libel, under the Rules 54–57 of Practice in Admiralty, setting forth the facts and circumstances; that upon this libel the District Court caused an appraisement to be had of the amount of the defendants' interest in the steamer and in her freight for the voyage, and made an order for the giving of a stipulation, with sureties, for its payment into court whenever ordered; that the defendants entered into a stipulation in conformity with the order, and a monition was issued against all persons claiming damages for the loss occasioned by the fire on board the steamer, citing them to appear before the court, and make proof of their claims, on or before October 15, 1872, and designating George F. Betts, Esq., as the commissioner before whom the claims should be presented, and ordering public and other notice of the monition; that this notice had been served on the plaintiffs as well as on all other claimants; and the court made an order upon the plaintiffs and the other claimants, which had been served, restraining the further prosecution of all and any suit or suits against the defendants in respect of any such claim or claims.

The plaintiffs contended that the fire occurred, and the steamer and their merchandise was burned, by the neglect of the defendants, and not by their design; and the defendants denied any neglect. The plaintiffs also contended that if the fire occurred by the neglect of the defendants, it was necessarily with their privity or knowledge; this the defendants denied.

So much of the steamer and her machinery as was not detroyed was sold by the defendants November 21, 1868.

The defendants contended that the plaintiffs could not maintain this action, the District Court alone having jurisdiction. Deeming the determination of these questions important, the presiding judge proceeded no further with the trial, but reported the case for the consideration of the full court.

If upon the foregoing facts the plaintiffs could not maintain this action, they were to become nonsuit; or if the case ought to be continued to await the case in the District Court, that dispo-

sition was to be made of it; otherwise, the case was to stand for trial under such directions as the court should give.

*J. G. Abbott,* for the plaintiffs.

*J. D. Ball,* for the defendants.

GRAY, C. J.* This action is brought against the owners of a steamship, to recover for the loss of goods of the plaintiff, transported from Providence to New York, and there, on May 23, 1868, before they had been discharged, and while the ship was lying at the defendants' dock, destroyed by a fire which broke out in the defendants' buildings on the adjoining wharf.

It appears by the report before us, that the defendants, having been also sued in New York and elsewhere for damages to other parts of the cargo by the same fire, filed a petition on May 14, 1872, in the District Court of the United States for the Southern District of New York, under the act of Congress of 1851, *c.* 43, §§ 3, 4, and the 54th and 57th Rules of Practice in Admiralty of the Supreme Court of the United States, claiming the benefit of the limitation of liability provided in the act of Congress; alleging that the fire was not caused by their design or neglect, and that the damage resulting therefrom to the ship and cargo was done, occasioned and incurred without their privity or knowledge; setting forth the facts and circumstances by reason of which they claimed to be exempt from liability; offering to pay into court the amount of their interest in the ship and freight, or to stipulate for such payment, as the court might order; and praying for an appraisement of the value of that interest, a monition to all persons claiming such damages to appear and make proof of their claims, a decree ascertaining the amount of liability, if any, and making distribution accordingly, and an order restraining meanwhile the prosecution of all suits against them in respect of any such claims. A stipulation was thereupon ordered, approved and given, and a monition was issued, and an order made by that court, and served by its direction upon these plaintiffs in Massachusetts, and other parties in other states, restraining the further prosecution of their suits.

* MORTON, J., did not sit in this case.

At the trial of the present action, the plaintiffs contended, and the defendants denied, that the ship and goods were burned by the neglect of the defendants, and that, if the fire occurred by their neglect, it was necessarily with their privity and knowledge. The defendants contended that the plaintiffs could not maintain or prosecute this action, and that said District Court of the United States alone had jurisdiction. The case was thereupon reserved for the determination of the full court, according to whose opinion a nonsuit or continuance is to be entered, or a further trial ordered.

By the act of Congress of 1851, *c*. 43, § 1, in the absence of express contract, no owner or owners of any ship or vessel shall be liable for any loss or damage by fire to any goods on board, "unless such fire is caused by the design or neglect of such owner or owners." By § 3, their liability "for any embezzlement, loss or destruction by the master, officers, mariners, passengers or any other person or persons," of any goods on board, "or for any act, matter or thing, loss, damage or forfeiture, done, occasioned or incurred without the privity or knowledge of such owner or owners," shall in no case exceed the amount or value of their interest in the ship and freight. And by § 4, if such loss shall be suffered by several owners of goods on the same voyage, and the whole value of the ship and her freight for the voyage shall not be sufficient to make compensation to each of them, they shall receive compensation from the owners of the ship in proportion to their respective losses ; and for that purpose the owners of the goods, or the owners of the ship, or any of them, "may take the appropriate proceedings in any court for the purpose of apportioning the sum, for which the owner or owners of the ship or vessel may be liable, amongst the parties entitled thereto."

The object of the act of Congress is to exempt the owners of ships from the onerous liability to which they were held by the common law, as common carriers or otherwise, for the acts or neglect of their servants or agents, or of third persons, without their own knowledge or concurrence ; not to diminish their responsibility for their own wilful or negligent acts. *Moore* v. *American Transportation Co.* 24 How. 1. *Walker* v. *Transporta-*

*tion Co.* 3 Wall. 150. If a loss by fire is caused either by the design or by the neglect of the owners of a ship, the first section of the statute does not limit or take away their common.law liability. If the owners are a corporation, the president and directors are not merely the agents or servants, but the representatives of the corporation, and the acts, intentions and neglects of such officers are those of the corporation itself. *Philadelphia, Wilmington & Baltimore Railroad* v. *Quigley*, 21 How. 202, 210, 211. *Gilman* v. *Eastern Railroad*, 13 Allen, 433, 441. To hold otherwise would be wholly to exempt all steamship companies from losses by fire of goods on board their ships, however carelessly or imperfectly they built their furnaces and engines. Such a construction is too novel and unreasonable to be entertained.

If the loss was occasioned by the neglect of the defendants, it must have been with their privity or knowledge, and the provisions of the third and fourth sections of the act of Congress, limiting the amount of liability, have no application.

The plaintiffs seek to maintain this action solely upon the ground that the fire by which their goods were destroyed was caused by the defendants' own neglect, and they have the right to have that question determined by a jury. A proper form of trying that question is by an action at law. *Sutton* v. *Mitchell*, 1 T. R. 18. *Wilson* v. *Dickson*, 2 B. & Ald. 2. *Walker* v. *Boston Insurance Co.* 14 Gray, 288.

The jurisdiction of this court, having once attached by the bringing of this action, could not be defeated by subsequent proceedings in the federal courts. *Smith* v. *M'Iver*, 9 Wheat. 532, 535. *Wallace* v. *M'Connell*, 13 Pet. 136. *Taylor* v. *Carryl*, 20 How. 583. *Mallett* v. *Dexter*, 1 Curtis, 178. *Johnson* v. *Bishop*, 1 Woolworth, 324.

By the express provision of the act of Congress of 1793, *c.* 22, § 5, and the decisions of the Supreme Court of the United States, the federal courts have no authority or jurisdiction to grant injunctions to stay proceedings in any court of a state. *Diggs* v. *Wolcott*, 4 Cranch, 179. *Peck* v. *Jenness*, 7 How. 612, 625. The order of the learned district judge, so far as it undertook to restrain the prosecution of the present action, was therefore a nullity.

The only cases cited in support of that order, in the opinion reported, *In re Providence & New York Steamship Co.* 6 Benedict, 124, are the decisions of Mr. Justice Story, *In re Carlton*, 5 Law Rep. 120, and of Judge Betts, *In re Smith*, 1 N. Y. Leg. Obs. 291, which, so far as they affirm such an authority in the federal courts under the bankrupt act of 1841, were overruled by the unanimous judgment of the Supreme Court in *Peck* v. *Jenness, ubi supra.* If such an authority exists under the bankrupt act of 1867, (which has never been recognized by the Supreme Court of the United States or by this court,) it depends upon the peculiar provisions of that act, and the exclusive jurisdiction of the federal courts in matters of bankruptcy.*

There is nothing in the decision of the Supreme Court in *Norwich Co.* v. *Wright*, 13 Wall. 104, or in the admiralty rules of that court, Ib. xii, xiii, to control our conclusion. In that case, a libel in admiralty *in personam* was filed in the District Court of the United States in Connecticut, to recover for a loss occasioned by the neglect of the master and mariners of the respondents' steamer, and there was no suggestion of neglect, privity or knowledge on the part of the respondents themselves. The District Court, and the Circuit Court on appeal, entered a decree for the libellant, notwithstanding a petition filed by the respondents, suggesting that proceedings *in rem* against the steamer had been commenced in behalf of the same libellants in a District Court in New York. The Supreme Court affirmed the decree in Connecticut, but directed further proceedings there to be suspended for a reasonable time to enable the owner of the vessel to file a proper petition in the District Court in New York, under § 4 of the act of Congress, for apportioning the damages sustained by various parties. In that case, all the proceedings were in admiralty in the federal courts; and there is nothing in the opinion of the Supreme Court, or in its rules upon the same subject, which warrants the inference that it intended to disregard the act of Congress of 1793, or its own previous adjudications, reaffirmed in the same volume in *Watson* v. *Jones*, 13 Wall. 679,

---

* See U. S. Rev. Sts. §§ 720, 510b.

719, upon the subject of injunctions to stay proceedings in the state courts.

There is indeed an *obiter dictum* on page 123, that " it is also evident that the state courts have not the requisite jurisdiction ' to entertain proceedings for the apportionment of damages under the act of Congress. Unless that *dictum* is to be restricted to the case then in judgment, in which proceedings were already pending in the federal courts, we cannot yield our assent to it, in view of the provisions of the Gen. Sts. c. 113, § 2, conferring upon this court jurisdiction in equity, in " cases in which there are more than two parties having distinct rights or interests which cannot be justly and definitely decided and adjusted in one action at the common law," and also " according to the usage and practice of courts of equity, in all other cases where there is not a plain, adequate and complete remedy at law," and of the fact, noticed on page 119 of the same opinion, that the earlier statutes of Great Britain, as well as of this Commonwealth and of the State of Maine, upon the same subject, from which the act of Congress was derived, expressly authorized such proceedings to be by bill in equity. Sts. 7 Geo. II. c. 15, § 2 ; 26 Geo. III. c. 86, § 4 ; 53 Geo. III. c. 159, § 7. St. 1818, c. 122. Rev. Sts. c. 32, § 2. Gen. Sts. c. 52, § 19. St. of Maine of 1821, c. 14, § 9. Rev. Sts. of Maine of 1840, c. 47, § 9.

But this case, in its present aspect, does not require us to consider the extent of the equitable jurisdiction of this court, or what weight may hereafter be given to any proceedings in the federal courts, in case, after a verdict for the plaintiffs in this action, the defendants shall move for a stay of judgment or of execution. It is sufficient now to decide that there is nothing in the proceedings of the District Court, or in the decisions or rules of the Supreme Court of the United States, which should induce this court to suspend the exercise of its jurisdiction to try this action upon its merits. *Case to stand for trial.*