THE REPUBLIC.

In re MYERS EXCURSION & NAV. CO.

(Circuit Court of Appeals, Second Circuit. April 18, 1894.)

SHIPPING—LIMITATION OF LIABILITY—CORPORATE SHIPOWNERS—UNSEAWORTHINESS.

Injuries and death occasioned to excursionists through the inability of an excursion barge to withstand a thunderstorm of no unusual severity cannot be said to occur "without the privity or knowledge" (Rev. St. §

4283) of the corporation owning the barge, so as to limit its liability, when it appears that the president thereof himself undertook to make an examination of the barge at the beginning of the season, but failed to discover rottenness and weakness of parts, which a thorough examination would have disclosed. 57 Fed. 240, affirmed.

Appeal from District Court of the United States for the Eastern District of New York.

Petition by the Myers Excursion & Navigation Company for limitation of liability in respect to their excursion barge, the Republic. The petition was dismissed by the court below (57 Fed. 240), and the petitioner appeals.

Wing, Shoudy & Putnam (on the brief), for appellant.

Fernando Solinger and Mirabeau L. Towns, for respondents. G. W. Cotterill and Raphael J. Moses, advocates.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The district court dismissed the petition of the appellant, the owner of the barge Republic, to limit its liability for the losses, damage, and injury which occurred upon the barge, upon the ground that the losses, etc., were occasioned by reason of the unseaworthy condition of the barge, of which the owner was chargeable with knowledge, and consequently did not occur "without the privity or knowledge" of the owner, within the meaning of the statute of the United States limiting the liability of shipowners. The appellant insists that the district court erred in its conclusions both of fact and of law.

The Republic was a double-decked excursion barge, 157 feet over all, and 40 feet beam. Above her main deck was a promenade or dancing deck, and 9 feet above this a hurricane deck. The hurricane deck was supported by center posts of yellow pine running down to the keelson, and by outside stanchions, some of oak and some of yellow pine, and averaging about 5 inches square, extending, some of them from the main deck, and some from the promenade deck. There were two masts, made of white pine, 12 to 14 inches in diameter, which ran from the keelson to about 30 feet above the hurricane deck. Attached to the masts were arms, to which were fastened stringers to support the upper deck in the center. The pilot house was forward on the hurricane deck, and was reached by a ladder from the promenade deck. She did not carry sails or motive power.

In the afternoon of August 12, 1891, while the barge was at Cold Spring Harbor, L. I., with a party of excursionists on board, to whom the petitioner had chartered her and a tug to convey them from New York to Cold Spring Grove and back, and while just about to leave the wharf on the return trip, she was struck by a severe squall on the starboard bow, which raised the hurricane deck on the starboard side off its fastenings, doubling it over against the two masts and the pilot house. The masts were broken off, and the pilot house overturned, crushing down the roof, and causing the broken portion to fall on the port side of the barge. Thirteen passengers on the port side of the promenade deck were killed, and many others were injured, by the falling of the roof.

We think the proofs fully justify the conclusions of the district judge that the squall was only a violent thunderstorm, such as are frequent in midsummer, and not so extraordinarily violent that it would have done material injury to an ordinarily sound vessel; and we agree with him that the proofs show that the hurricane deck was inadequately secured to the stanchions and the deck below, and that the accident was attributable to that cause, and to the unsound condition of the masts, which gave way, and fell upon the upper deck. The barge was an old vessel,—26 or 28 years old,—and had been used for the previous 20 years in carrying excursion parties in the summer, and as a freight or hay barge in the fall and winter. She had been owned by the petitioner since 1877. She had been overhauled, and quite extensively repaired, in the spring of 1890, and some trifling repairs were made upon her in the spring of 1891. Nevertheless, her masts were rotten; many of her stanchions were rotten; some of them were insecurely fastened to the framework of the hurricane deck; and some of her center posts, where they intersected the main and hurricane decks, were rotten. She was well enough adapted for the pleasant-weather excursions for which she would ordinarily be used, but was too weak to encounter the stress of a severe windstorm.

The district judge did not find, in terms, that the officers of the petitioner were aware of the unfit condition of the barge, but placed his decision against the right to limit liability upon the ground that there was an implied warranty on the part of the corporation that the barge was reasonably fit for the service for which she was chartered; that it was the duty of the corporation, before dispatching her upon the voyage, to know whether she was in a fit and seaworthy condition; that a prior examination of the vessel would have disclosed that she was not in such condition; and that the corporation was chargeable with knowledge of what its officers might have known, and were bound to know. Throughout the summer preceding the accident, as well as for several years previously, the barge had been employed in the immediate business of the corporation. The corporation was the lessee of various places of resort near the waters in the neighborhood of New York City, where it had an office; and it owned a number of tugs and barges, and its business was the conveying of excursion parties by its tugs and barges to and from these places of resort. The president of the corporation was personally cognizant, in a general way, with the condition of all the barges of the corporation, including the Republic. Among his other duties, he supervised the repairing of the barges; and he was accustomed to go over them once a year, to ascertain what repairs were necessary. In the spring of 1891 he examined this barge, and ordered some new stanchions put in. He testifies that he did not discover any unsoundness in the masts, and found no unsound stanchions, except those which he ordered removed and replaced by new ones. Yet at that time, in view of her condition as subsequently revealed, the masts and many of the old stanchions of the barge must have been so rotten that their condition could not have escaped his observation, if he

had made a reasonably thorough examination. We are constrained to conclude that he did not do so, and did not cause necessary repairs to be made, because, expecting she would be used in fair weather, for holiday purposes, he thought her to be sufficiently strong and fit for such occasions, and overlooked the contingency that she might be exposed to such a peril as overtook her.

We do not find it necessary to consider whether a shipowner is denied the protection of the statute whenever the loss has occurred from the unseaworthy or defective condition of his vessel. The warranty of seaworthiness which is always implied on the part of the shipowner holds him to the obligation of providing a vessel which is in all respects reasonably fit for the voyage and employment in which she is to engage. Yet there may be a breach of this obligation without his knowledge, and without his personal negligence. He may have employed a most competent expert to make all necessary examination of the vessel just prior to the voyage, an expert possessing skill and experience far beyond his own, and the expert may have failed to exercise sufficient care to discover defects which ought to have been found. It would be a hard construction of the statute which would deprive the shipowner of protection under such circumstances. Certainly, this case does not require us to consider whether such a construction of it is necessary.

The question we are to decide is whether a shipowner is entitled under the statute to limit his liability when the loss arises from a defective condition of his ship, of which he was ignorant because of his own negligent examination of the vessel. The statute was principally taken from the English statutes of 26 & 53 Geo. III. These statutes, instead of the words "privity or knowledge," use the words "privity and knowledge," or "fault or privity," to express the exception. In the later English statutes (the merchants' shipping acts of 1854 and 1862) the phraseology was varied so that the exemption was limited to losses occurring without the "actual fault or privity" of the shipowner. There is no reason to suppose that the diverse phraseology of these acts was employed for the purpose of expressing different rules of exemption, as there were no decisions of the English courts which indicated that the terms were not synonymous. The English courts have always construed the acts as intending to exempt the shipowner when he himself has not been in any way to blame, and to deny him the limitation of his liability only when personal blame is attributable to him. The Warkworth, 9 Prob. Div. 20, 145; The Spirit of the Ocean, 34 Law J. Adm. 74. Undoubtedly, by our statute, as by the English statutes, the common-law liability of the shipowner is not restricted in cases where his personal neglect has been an inducing cause of the loss. It was the intention of congress to relieve shipowners from the consequences of all imputable culpability by reason of the acts of their agents or servants, or of third persons, but not to curtail their responsibility for their own willful or negligent acts. Moore v. Transportation Co., 24 How. 1; Walker v. Transportation Co., 3 Wall. 150; Craig v. Insurance Co., 141 U. S. 638, 12 Sup. Ct. 97; Quinlan v. Pew, 5

C. C. A. 438, 56 Fed. 111; Hill Manuf'g Co. v. Providence & N. Y. Steamship Co., 113 Mass. 495. A loss is not occasioned without the knowledge or privity of the shipowner, when it arises from his personal neglect to inform himself of the defective condition of his vessel, the vessel being under his immediate personal supervision.

Where the shipowner is a corporation, the privity or knowledge which precludes the statutory right must be that of the managing officers. Craig v. Insurance Co., supra. In the present case the privity or knowledge of the corporation consisted in the negligence of its president, who, by his omission of proper care in his examination of the vessel, failed to discover her defective condition. We do not understand it to be seriously argued that section 18 of the act of congress of June 26, 1884, displaces the liability of shipowners for losses occasioned by their own negligent acts. The section does not purport to repeal any pre-existing law, but is legislation in pari materia with the act of 1851. The scope and object of the section are pointed out in Force v. Insurance Co., 35 Fed. 778; The Amos D. Carver, Id. 669; and Gokey v. Fort, 44 Fed. 364. It has no application to the present questions.

The decree of the district court dismissing the petition is affirmed, with costs.