## THE TOMMY.

(Circuit Court of Appeals, Second Circuit.    January 7, 1907.)

### No. 100.

**1. SHIPPING—RIGHT TO LIMITATION OF LIABILITY—DEFECTIVE EQUIPMENT OF VESSEL.**

A shipowner, who has provided a suitable person as his agent to inspect or provide for the proper equipment of the vessel, is not deprived of the benefit of the statute limiting liability by proof of negligence of such agent in failing to provide such equipment or to maintain it in good condition of which the owner had no knowledge or notice.

[Ed. Note.—Limitation of owners' liability, see note to The Longfellow, 45 C. C. A. 387.]

**2. SAME—PRIVITY OF OWNER.**

The owner of a fleet of barges employed in the lightering service is not deprived of the right to a limitation of liability for the death of an employé engaged in discharging a cargo of railroad rails from one of the barges, resulting from the use of defective tongs borrowed by the master from another boat, where it was shown that such tongs were used infrequently and were not a part of the ordinary equipment of the barges, but were supplied to some, and, when needed by others, were borrowed from them; that the owner had no knowledge of the defect, and employed competent masters on whose request tongs were supplied or replaced when out of repair.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the United States District Court for the Southern District of New York, dismissing the libel and petition of Leah M. Saville for limitation of liability. The opinion of the court below is reported in 142 Fed. 1034.

LaRoy S. Gove and James J. Macklin, for appellant.

H. C. Smythe and Charles C. Sanders, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. The court below concluded that "there can be little doubt of the defective condition of the tongs, and that the accident was principally attributable thereto." Of the five witnesses who testified to the defective condition of the tongs, four were manifestly hostile to the libelant and had been discharged from her employ, and the fifth had left her service, while five other witnesses testified that the tongs were, or appeared to be, in good condition. While we are not prepared to say, after an examination of the record, that we would have reached the same conclusion as that of the District Judge, yet, as he saw and heard the witnesses, we are not disposed to question the correctness of his finding on this point.

It appears from the record that libelant had some 30 or 40 barges of the character of the Tommy engaged in the lighterage business and in handling all kinds of merchandise, including railroad rails; that the Tommy was equipped with the usual hoisting appliances; that tongs for handling railroad rails are mere attachments hooked on to the hoisting appliances; and that, while they are part of the means used on board of such barges for unloading cargo, they are not part of the equipment of each barge. The testimony on this point is as follows:

The master, Thompson, said:

"You wouldn't find tongs on every boat; some boats have them, and some boats have not them.

"Q. If one barge was not equipped with these tongs, you would go to another barge and get the tongs? A. Yes, sir; yes, sir.

"Q. But, however, it was always part of the equipment of some of the barges to have the tongs? A. Yes, sir. * * * All the barges haven't got tongs; they get them from one another. The way we have been using them over there there is, many times, long times, we don't use them, so some of the boats have them, and we loan them or borrow them from them."

The witness Wills testifies as follows:

"Q. Is it customary, or not, for these barges to be equipped with tongs? A. Not necessarily; no.

"Q. What do you do when there is a necessity for tongs? A. Then you go and borrow a pair from the nearest boat to you.

"Q. That has been for many years here? A. Always so."

Nelson, witness for the claimant, formerly employed by the libelant, testifies: "We had several pairs;" and again: "We have plenty of them tongs."

· Libelant's ·son ,was manager of .the business at the office; he also looked after the fitting out of the boats. He died after the accident, but before any testimony was taken in this case.

The testimony as to custom in procuring equipment, and in the use of tongs, is as follows:

Louis Smith, who was the outside manager of the libelant's business, testified as follows:

"Q. Supposing the barges needed anything by way of equipment or otherwise, how would you know that? A. Anything he wants on the boats the captain goes to the office and gets an order, and goes and gets it."

Thompson, the captain, referring to his having borrowed the tongs · in question, says as follows:

"Q. You didn't send to your place of business or office for them, did you? A. No, sir.
"Q. Why didn't you send word to Saville? A. We never used to do that. If I am short I loan to one man, and if he is short I loan him."

This testimony as to custom is affirmed by Benson, a former employé of the libelant, but a witness for claimant, who says, referring to the tongs:

"Q. Where are they now? A. I left them down there (at the blacksmith's). I bought a new pair. I got orders from Mr. George Saville—he is dead now. He gave me an order, and I got a new pair of tongs."

It thus appears from the testimony that when the tongs were unfit the master reported the fact to the manager, libelant's son, and he gave an order to have them supplied, but that when tongs were needed for use on any particular boat, and there were none on board, the master borrowed them from one of the other barges. The owner, therefore, had provided the suitable and customary appliances for the service in which the barges were engaged, and is entitled to the protection of the statute, unless it appears that she failed to appoint a suitable person to supervise the barge and its equipment.

It appears that Thompson, the man in charge of the lighter, had served as lighter captain for seven or eight years, working with another man in loading and discharging all kinds of cargoes, and loaning or borrowing tongs of the character of those here in question whenever occasion required, in accordance with the custom, as stated above. It further appears that Thompson obtained the tongs in question from Benson, the master of the barge Brooklyn, and that, assuming the tongs to be defective, Benson was negligent in keeping them on board without notice to libelant, because, as shown by his own testimony, as soon as he brought their defective condition to the attention of the manager, the manager provided him with a new pair of tongs. It nowhere appears that libelant was negligent in employing either Thompson or Benson, or that either of them was unfit to discharge the duties of barge captain. Assuming that the tongs were unfit for this particular service, it appears that libelant had no notice of such unfitness. It would seem to follow, therefore, that the damage was occasioned without the privity or knowledge of the libelant, who provided suitable equipment and appliances and the usual and proper means for replacing the same when they were unfit or worn out.

In the Republic, 61 Fed. 109, 9 C. C. A. 386, this court, discussing the construction of the statute limiting liability, suggested that it would be a hard construction of the statute to deprive the shipowner of protection where a loss had occurred from the unseaworthy or defective condition of the vessel, without knowledge of the owner and without his personal negligence, and held as follows:

"It was the intention of Congress to relieve shipowners from the consequences of all imputable culpability by reason of the acts of their agents or servants, or of third persons, but not to curtail their responsibility for their own willful or negligent acts. Moore v. Transportation Co., 24 How. (U. S.) 1, 16 L. Ed. 674; Walker v. Transportation Co., 3 Wall. (U. S.) 150, 18 L. Ed. 172; Craig v. Insurance Co., 141 U. S. 638, 12 Sup Ct. 97, 35 L. Ed. 886; Quinlan v. Pew, 56 Fed. 111, 5 C. C. A. 438; Hill Manuf'g Co. v. Providence & New York Steamship Co., 113 Mass. 495, 18 Am. Rep. 527."

This case, and the decisions therein cited, establish the rule that where the owner has provided a suitable person or persons as his agent to inspect, or provide for the proper equipment of, the vessel, he is not deprived of the benefit of the statute limiting liability by proof of negligence of such agent, where he has had no notice or knowledge of such negligence or resultant defect. Van Eyken v. Erie Railroad Co. (D. C.) 117 Fed. 712.

The decree is reversed, with costs, and the cause is remanded to the court below with instructions to enter a decree in accordance with this opinion.