## THE ONEIDA.

### Petition of BENEDICT.

(Circuit Court of Appeals, Second Circuit.  May 8, 1922.)

#### No. 304.

Shipping ☞207—Launch owner's liability held limited to value of launch.

Where owner of steam launch stated to captain of scow, transporting material with which to make a fill up a creek, "This little launch is able in good weather to take you up; if my launch is disengaged, you may call my launchman," and the scow was injured while being towed by the launch, when struck broadside by wind and tide, carrying scow to other side of channel, where she struck on a rock and was stranded, the liability of the launch owner was limited to the value of the launch, under Rev. St. § 4283 (Comp. St. § 8021), in the absence of a showing that the launchman was incompetent.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the petition of Elias C. Benedict, as owner of the gasoline launch Oneida, for limitation of liability to John C. Rodgers, as owner of the scow Speedway, and Gus Carlsen as master thereof. Petition granted, and John C. Rodgers and Gus Carlsen appeal. Affirmed.

Bigham, Englar & Jones, of New York City (D. Roger Englar and L. J. Matteson, both of New York City, and R. F. Shaw, of Syracuse, of counsel), for appellants.

Duncan & Mount, of New York City (Russell T. Mount, of New York City, of counsel), for appellees.

Before ROGERS and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

MANTON, Circuit Judge.  A libel in admiralty, by John C. Rogers as owner of the scow Speedway and Gus Carlsen as master thereof, was filed November 24, 1914, against the appellee in personam, claiming to recover $2,200 for damages alleged to have been sustained by the scow, and also to recover $150 for loss of personal effects by the appellant Carlsen.  The suit was tried in June, 1916, and an opinion was filed in which this petitioner appellee was held liable to the ex-

tent of the value of the launch Oneida. It was found that the damages to the appellants were caused without the privy or knowledge of the appellee. An interlocutory decree was entered, and the cause referred to a commissioner to ascertain and compute the amount of damages. On August 4, 1916, an order was entered in said suit amending the answer of the appellee so as to set forth the right of limitation of liability. In the petition filed in this proceeding, the value of the launch is alleged not to exceed $500. A decree has been entered below permitting the limitation of liability to the value of the Oneida.

In November, 1913, the appellee contracted with one Christiano, a contractor, for the building of a sea wall to run along the property of the appellee at Chimney Corner creek, at Greenwich, Conn. The contract provided for the performance of the work on a cost plus 10 per cent. basis. Christiano contracted for the purchase and delivery of stone and cinders for the filling in from the Moran Towing & Transportation Company in January, 1914. The Moran Company agreed to deliver the material "alongside the property of E. C. Benedict, Indian Harbor." Deliveries were not to commence "until such time as Indian Harbor is free from ice." At the suggestion of Christiano, the Moran Company sent a superintendent to look over the channel, and he testified that at the fill the bottom was level and soft for a boat to lie there, but because of the shallow water the Moran Company advised Christiano that they would deliver the scows alongside Benedict's dock, where the Oneida was moored, and advised the contractor to unload the materials from the scow onto the schooner and transport the same to the fill in that way. The place where the filled-in work was to be done was about three-fourths of a mile up Chimney creek from Benedict's dock. The channel in the creek at low tide is about 100 feet in width. The average tide is about 7 feet. There was some navigation in the creek.

The launch Oneida had towed schooners with fertilizer up the creek; also a scow, which came from New York to get the Speedway off after the grounding, was towed up the creek and back again by the Oneida in charge of the appellee's launchman. Poles stuck in the mud marked both sides of the channel. Work was commenced the latter part of June. A schooner was employed for the purpose of transporting the material in the creek during the progress of the work. She had a gasoline engine of about 10 h. p. The scow Speedway, captained by appellant Carlsen and owned by the appellant Rogers, arrived with a load of stone on April 1, 1914. Part of this cargo was transferred to the schooner and carried up the creek on the schooner. The launch and schooner then towed the Speedway from Benedict's dock to the place of the fill. After having discharged the balance of the cargo at the fill, the Speedway was towed down the creek by the Oneida alone. On this occasion there was plenty of water and the navigation was safely performed. No objection was made to being towed up the creek to the fill. The Oneida was 26 feet 6 inches long, 7 feet of beam, and drew from 2½ to 3 feet, and had a 25 h. p. engine. On this first arrival at Benedict's dock, the appellee told Carlsen he

could not get up the creek with the tug, as the tug would draw too much water, and that the scow itself would not get up if its draft was 7 or 8 feet. He advised the master to look at the harbor himself, and warned him that at the place of the fill there was "an old Revolutionary dock and a lot of stone." The master later told Benedict that he had been up Chimney Corner creek, and that there was nothing but mud, except for some small rock at the upper end, and this would not cause trouble to the barge.

After the Speedway had been lightened of part of its load, Benedict testified that he stated to Capt. Carlsen:

"Captain, this little launch is able in good weather to take you up. If my launch is disengaged, you may call my launchman. But, notwithstanding you tell me it is nothing but mud, and you will not be afraid to be stuck in the mud, if you will only go on a rising tide—now be careful—on a rising tide, then, if you fail, a rising tide will help you out, and the launch may be able to take you up."

The launchman's testimony confirmed this, and he further stated that, at any time the scow captain was willing to be towed up, he would assist with the Oneida, provided this did not interfere with the launchman's regular work. This testimony is not contradicted by Carlsen, and the testimony of the appellee was accepted by the court below. There was no evidence to warrant a belief that the appellee had knowledge of the contract between Christiano and Moran Company, and Christiano had never asked the appellee for the use of the Oneida. The appellee's offer of the use of the Oneida was made without compensation and no consideration therefor was received by him.

When the Speedway came on her second trip, about April 23, 1914, the appellee's launchman asked Capt. Carlsen if he wanted the Speedway towed up, to which Carlsen replied, "All right." With the aid of another power boat, the Oneida assisted in towing the Speedway up the creek. The Oneida was on a line ahead and another launch was on the Speedway's starboard side. The boats passed the first turn and had reached the second turn in the channel, when the wind and tide struck the Speedway broadside and carried her to the east side of the channel. She struck upon a rock and was stranded. The appellee's launchman had been in his employ for 12 years and was familiar with the channel, and said he never knew of the presence of a rock at the point of grounding, and was positive that the rock was submerged in the mud.

The question presented on this appeal is whether or not the stranding of the Speedway occurred without privity or knowledge of the appellee. If so, then the decree below was right. On the foregoing facts, we are satisfied that the stranding was without the privity or knowledge of the appellee as referred to in the statute. Under section 4283 of the Revised Statutes (Comp. St. § 8021) the appellee was entitled to limit his liability to the value of the launch.

The appellee's offer to lend the Oneida for towing purposes must be found in the conversation referred to above between him and the scow master. This was not an offer to tow the Speedway at all stages of the tide and under any and all conditions of the wind. In contrac-

tual towing cases, the tug owner is not denied limitation of liability unless he personally sanctions the starting out of the tow under adverse conditions. Where it appears that a private vessel, as a launch, is properly manned and equipped at the time of the accident, and the injury occurs without the owner's privy or knowledge, he may be liable for the same only to the extent of the value of the vessel. Under the act of Congress, he is only chargeable for his willful and negligent acts, and the negligence of those in charge of the navigation of the vessel, to which he was not privy and of which he had no knowledge, will not be imputed to him. The Republic, 61 Fed. 109, 9 C. C. A. 386; The Tommy, 151 Fed. 570, 81 C. C. A. 50; The Alola (D. C.) 228 Fed. 1006.

The knowledge or privity that excludes the operation of the statute must be in a measure actual, and not merely constructive. It must be actual, in the sense of knowledge or authorization, or immediate control of the wrongful acts or conditions, or through some kind of personal participation in them. The Colima (D. C.) 82 Fed. 665; Quinlan v. Pew, 56 Fed. 111, 5 C. C. A. 438; The La Bourgogne, 210 U. S. 95, 28 Sup. Ct. 664, 52 L. Ed. 973. There was no evidence in the record indicating that appellee's launchman was incompetent. His long period of service with the appellee and his familiarity with the waters in question negatives the idea of incompetency, and leads us to conclude that the Oneida was properly manned at the time of towing.

Decree affirmed.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes