### CORYELL et al. v. PHIPPS et al.

No. 10185.

Circuit Court of Appeals, Fifth Circuit.

June 9, 1942.

---

[10] Commonwealth Title Ins. & Trust Co. v. New Jersey Lime Co., 1916, 86 N.J.Eq. 450, 454, 100 A. 52, 53.

David W. Dyer, of Miami, Fla., and T. Catesby Jones and Leonard J. Matteson, both of New York City, for appellants.

Scott M. Loftin, Jas. E. Calkins, Robert H. Anderson, and Paul R. Scott, and Fred Botts, all of Miami, Fla., and Eugene Underwood, of New York City, for appellees.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

The houseboat Seminole, while lying in dead storage in the yacht basin owned and operated by George Pilkington at Fort Lauderdale, Florida, caught fire following an explosion in her engine room. The fire spread to other vessels stored in the basin, and damaged or destroyed more than forty of them. Appellants, who were owners of vessels to which the fire spread, filed this libel against John S. Phipps (by whom the Seminole was alleged to be owned, operated, or controlled) and Pilkington (as bailee of the vessels in the basin) to recover damages alleged to have been sustained by reason of the negligence of said defendants.

After a thorough trial in the court below, judgment was entered dismissing the libel as to both defendants. On this appeal therefrom, appellants disregard the respondent Pilkington, and concentrate their efforts upon reversing the judgment as to Phipps. It is contended that Phipps should have been held liable because, although the legal title to the houseboat was in the Seminole Boat Company, a Delaware corporation, the evidence clearly showed that Phipps was the actual owner and was in control and operation of the vessel, and that his negligent care of her, through his servants, was the proximate cause of the fire.

In 1915 Phipps acquired a one-half interest in the Seminole by purchase from his brother. In 1927 the boat was completely overhauled, and in 1928 the Phipps brothers organized the Seminole Boat Company, to which the boat was transferred in furtherance of the corporate purpose to enter the charter business for profit. The stockholders of the corporation held meetings, elected officers, kept minutes; and the corporation, through its duly elected officers, promptly took appropriate steps to launch the Seminole upon her career as a charter vessel. In 1929 and 1930 she was chartered several times, but she was too large and expensive to be operated successfully as a charter vessel during the following years of severe economic depression. As a consequence, she spent much of the time in dead storage at Pilkington's pier, and was listed for sale in Miami in 1935.

On March 23, 1935, H. C. Phipps sold his stock in the Seminole Boat Company to his sister, and, after the charter season was over in April, 1935, the two stockholders took the Seminole on a fishing trip to the Florida Keys. After the cruise the Seminole was once more moved to Pilkington's, where she was prepared for storage by the crew and was turned over to Pilkington on April 15, 1935. It is undisputed that the vessel had been examined and pronounced fit by an experienced ship surveyor in February, 1935; that she developed no flaws during the cruise or prior to reaching Pilkington's; that the crew left her gasoline valves closed, her electric switches open, her gas tanks registering empty, and her bilges clean and free of gasoline or gasoline vapor; and that she was repeatedly examined by competent men between April 15 and June 24, 1935, who discovered nothing wrong with her. At all times after the title to the Seminole was transferred to the corporation her movements were directed by the officers of the corporation, she was manned by a crew employed by those officers, and all business dealings in connection with her operation

and management were conducted by those officers.

On June 24, 1935, an officer of the Seminole Boat Company employed R. C. Abel to go to Pilkington's to inspect the Seminole and to bring back for storage some fishing gear that was on her. Abel obtained the keys to the boat from Pilkington, and boarded her in company with a man named Thomas. Abel entered the engine room through its window, and crossed to the main switchboard, where he struck a match and proceeded to close several of the switches. As he closed the last switch, sparks emanated from a point approximately a foot to his left, and an explosion occurred followed by the fire that caused the damage. After the fire a diver discovered that the gasoline valves and draw-off valves on the Seminole were open.

Upon these facts the court below found that the presence of gasoline fumes in the engine room was a defective condition that proximately caused the fire, but that the negligence to which this condition was attributable was that of the Seminole Boat Company, which was not a party defendant to the suit; that the Seminole Boat Company was incorporated in good faith for a valid purpose, and no reason was shown to justify disregarding the corporate entity or treating it as agent and alter ego of John S. Phipps; and that Phipps was not shown to have such privity or knowledge with respect to the defective condition as would make chargeable to him the negligence responsible for the loss.

■ The basic dispute turns upon the ultimate facts, for when they have been ascertained the principles of law applicable thereto are well settled. This being an appeal in admiralty, the findings of fact made by the court below are not binding upon us, but we think the evidence preponderates in favor of the findings made in each material instance. Under the evidence, the case presents itself in this aspect: Appellants' vessels sustained damages by reason of the negligence of the Seminole Boat Company. In order to hold Phipps to personal liability, appellants had the burden of establishing, by a preponderance of the evidence, that the corporation was an artifice and a sham designed to execute illegitimate purposes in abuse of the corporate fiction and the immunity that it carries, and that its activities in reality were those of Phipps personally.[1] This burden was not discharged.

■ If, however, appellants had established that the corporate veil should have been pierced and Phipps disclosed as the true owner of the vessel, an affirmance against them still would result. Section 4283 of the Revised Statutes, 46 U.S.C.A. § 183, limits the individual liability of any shipowner to the value of his interest in the vessel and freight in all cases of damage resulting from negligence without the privity or knowledge of the owner. The evidence affirmatively establishes that no actual privity to or knowledge of the defective condition obtaining upon the Seminole was attributable to Phipps personally, and that none could be imputed to him since he had exercised due care and diligence in selecting competent men to man the vessel, and had imposed upon them full duties as to inspection and maintenance of her.[2]

The judgment appealed from is affirmed.

[1] McCaskill Co. v. United States, 216 U.S. 504, 514, 30 S.Ct. 386, 54 L.Ed. 590; Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310; Loomis-Manning Filter Co. v. Manhatten Filter Co., C.C., 117 F. 325; United States v. Milwaukee, etc., Co., C.C., 142 F. 247; New York Trust Co. v. Carpenter, 6 Cir., 250 F. 668; Cook on Corporations, Sections 6, 663, and 664; Powell's Parent and Subsidiary Corporations, page 2; Wormser's The Disregard of the Corporate Fiction and Allied Corporate Problems, page 84.

[2] Lord v. Goodall S. S. Co., C.C., Fed. Cas.No.8,506; Id., 102 U.S. 541, 26 L.Ed. 224; The Annie Faxon, 9 Cir., 75 F. 312; Van Eyken v. Erie R. Co., D.C., 117 F. 712; The Tommy, 2 Cir., 151 F. 570; The Alola, D.C., 228 F. 1006; The Erie Lighter 108, D.C., 250 F. 490; The Oneida, 2 Cir., 282 F. 238; The 84-H, 2 Cir., 296 F. 427, certiorari denied 264 U.S. 596, 44 S.Ct. 454, 68 L. Ed. 867.