## Briggs v. Day and others.

## Day and others v. The H. W. Hills.

(*District Court, S. D. New York. July 23, 1884.*)

1. COLLISION—TUG AND TOW—OBSCURATION OF LIGHTS.

A tug is bound to keep her colored lights in such a position that her tow will not obscure them, as respects vessels at a distance requiring the notice which the colored lights are designed to afford.

2. SAME—LOOKOUT—MUTUAL FAULT.

Where the tug T. had on her starboard side the barge M. in tow, loaded with railroad cars, partly sheltered by a narrow fore and aft roof called an umbrella, which was of such height as to obscure the tug's green light as she was going up the North river, and the steamer H., crossing the river to the northward and seeing no colored light, supposed the T. was going down river instead of up river, and ported so as to go astern of the T., as she supposed, but too late discovered the error and came in collision, *held*, that the collision was caused in part by the obscuration of the green light, for which the T. was responsible. *Held*, that the H. was also in fault for want of any proper lookout, when going at the rate of 13 miles in crossing the river, as such a lookout might have discovered that the T. was going up river in time for the H. to avoid her.

3. SAME—LIMITATION OF LIABILITY.

A libel to limit liability is not defeated by a recovery by a claimant of less than the stipulated value of the vessel, where his original claim was greater than its value.

4. SAME—PERSONAL INJURY—DAMAGES—CONTRIBUTION—ADMIRALTY RULE 59.

A deck hand on the H. having been injured by the collision without his own fault, *held*, that he had a several claim for his whole damages against the T.; and the T. being responsible, and having a right to indemnity from the H. for one-half what the T. must pay by reason of the common fault of both vessels, *held*, that the usual decree might go against both, without considering the question whether the deck hand, as a fellow laborer, could have maintained a separate suit against the H. or her owners alone.

In Admiralty.

*W. C. Peckham*, for Briggs.

*Owen & Gray*, for Day.

*E. D. McCarthy*, for Cheney.

BROWN, J. The above suits grow out of a collision which took place at about 7:15 P. M. on September 22, 1882, in the Hudson river, a little above Pavonia ferry, near the Jersey shore, between the steam-tug H. W. Hills and the scow or float Mohawk, which was in tow of the steam-tug Titan, and upon her starboard side. The plaintiff in the suit first above named was a deck hand upon the Hills, and was knocked down, stunned, and injured by the collision. He brought suit in the supreme court of this state against the owners and the charterers of the Hills and the owners of the steam-tug Titan, claiming $20,000 damages. The owners of the Hills thereupon filed their libel in this court, in the suit second above mentioned, to limit their liability under sections 4283 and 4286 of the United States Revised Statutes, at the same time contesting their liability. A stipulation

for the value of the Hills was given in the sum of $10,000, pursuant to the rule of the supreme court, and a monition was issued, together with an injunction. Briggs thereupon appeared to present his claim and to answer the libel; and the owners of the Titan have also appeared and answered the libel, and filed a stipulation in behalf of the Titan (Adm. Rule 59); so that the whole litigation has, in effect, been transferred into this court.

The H. W. Hills had left Twenty-third street, New York, bound for the Erie dock, Jersey City. She had no incumbrance, and was easily handled. Her course was down the river and somewhat crossing to the westward. She had no lookout except the pilot. The white lights of the Titan and her tow were seen when from a quarter of a mile to half a mile off, on the port bow of the Hills; and, no colored light being seen, it was supposed by the pilot of the Hills that the tug and tow were going down the river. The Hills was then pointing towards the Jersey shore, to the northward of the line of those lights. The tide was ebb, running about three knots, and the Hills was going from 10 to 12 knots in addition. The pilot of the Hills, finding that he was rapidly approaching the tow, ported his wheel in order to go, as he supposed, astern of it; but as the tug and tow were, in fact, going up river, his calculations were thwarted, and he did not perceive his error until too late to remedy it. He therefore kept on under all speed, but did not clear the Mohawk, the port bow of which struck the Hills a severe blow amidships, on her port side, inflicting considerable damage to the boat, and the injury to Briggs for which this suit was brought.

The Titan left pier 19, North river, bound for Hoboken. The Mohawk was on her starboard side, projecting some 20 feet ahead of her, and was heavily loaded with railroad cars. A shed roof, called an umbrella, ran fore and aft along the center of the Mohawk. The ridge or peak of the roof, which ran above the line of the keel, was 13 feet above the deck. The roof sloped on each side about four feet, the eaves being about six inches above the tops of the railroad cars, which were partly beneath them; and the pitch of the roof was about 10 inches. The outside of the float or scow was 16 feet 4 inches beyond the line of the eaves of the roof. The colored lights of the Titan were placed upon the top of her pilot-house, so as to be at that time 17 feet above the water; but they have since been raised to 20 feet. As the Mohawk lay along-side, the green light was eight feet from the outer edge of the float. On the morning after the collision the green light was found upon measurement to be about 13 inches above the top of the cars. As the ridge of the roof, or umbrella, of the Mohawk was some 15 or 16 inches above the top of the cars, the light would therefore be obscured to persons in the range of the umbrella and the light. I cannot entertain any doubt, therefore, that the reason why the pilot of the Hills did not see the green light of the Titan was because it was in fact obscured by the roof of the tow; nor can

I doubt that such an obscuration was a fault on the part of the Titan, and that it contributed to this collision.

The argument of counsel, that the right to tow vessels along-side necessarily involves some obscuration of colored lights, cannot be sustained to the extent here claimed. Rule 5, in connection with rule 3, requires the colored lights to be of such a character as to show a uniform and unbroken light over an arc of the horizon of ten points of the compass; namely, from right ahead to two points aft of abeam. The rule must be construed in reference to its evident and expressed object, to mark the position and course of the vessel carrying it, for the guidance of other vessels. The other lights required to be carried by steam-vessels, when towing other vessels, are in addition to their side lights, and in no way supersede all the requirements in respect to the latter. While such obscuration of colored lights as would be made in the space immediately about the tug by a tow much lower in the water would be wholly immaterial as respects the object of the rule, namely, to give notice to other vessels at a reasonable distance, yet any obscuration that operates at a distance, where other vessels need the notice and the warning that the colored lights are designed to furnish, must be held to be unauthorized and in violation of the rule.

As the Titan, prior to the collision, was headed somewhat towards the New Jersey shore, and as the Mohawk projected also somewhat ahead of the Titan, and the pilot-house of the Hills was lower than that of the Titan, there is no possible doubt that the roof of the Mohawk was between the Hills and the Titan's green light so as to obstruct it. The pilot of the Hills did see the vertical white lights, as well as the single light, which marked the tow, though he did not give them any special attention; and he naturally and properly inferred at first from the absence of the green light that the tow was moving down river, and he had a right to govern himself accordingly; for he had a right to assume that the green light would be visible if the tow was going up river. Much effort was made by counsel to show that the two white vertical lights of the steamer and the white light of the tow were sufficient to indicate whether the tow was going up or down; but the evidence shows that the three lights in such a case would not afford the means of determining this point, unless they were seen against some stationary background, like the shore or some other object; and the position of the Hills and the Titan is not shown to have been such as to afford such background. Had the green light been visible, as it ought to have been, there is no reason to doubt that the pilot of the Hills, who was looking for colored lights, would have seen it, and that the collision would have been avoided; and the Titan must therefore be held in fault.

The Hills had no lookout except the pilot in the pilot-house. There were two deck hands, including the plaintiff Briggs, one of whom should have been assigned to and have performed the duties

of a lookout proper. It is impossible to say that the absence of a lookout at his proper post was in this case immaterial, because there was a space between the umbrella and the top of the cars through which, in some positions, the light might possibly have been seen by a person on deck, and seasonable notice have been thereby conveyed to the pilot of the true course of the tug. But, aside from this, the evidence shows that the Hills was going down and across the river, and crossing the courses of other boats at the high rate of speed of about 13 miles an hour. If this does not in itself constitute imprudent and negligent navigation in the night-time, it does at least require to be combined with it the utmost closeness of watch of other vessels, both by the pilot and by a proper lookout. As I have said, there was no lookout at all; and the weight of evidence shows that, had a careful watch been kept upon the Titan and her tow, even though her green light were obscured, it would have been observed that she was going up river and not down, in time for the Hills to have avoided her. The Hills was unincumbered, and easily and quickly handled. I am satisfied that the Hills could have avoided the Titan at the distance of from 200 to 300 yards; and that between the time when the Hills arrived within that distance of her, and the time when the tug's white lights were first actually seen, there was sufficient opportunity to perceive that the tug was not going down stream, had a proper watch been kept. For this reason I must hold the Hills also in fault.

It is unnecessary to consider the question which has been raised by counsel, whether Briggs, being a deck hand on board the Hills, is precluded from recovering any damages of her, or of her owners, by reason of any fault in her navigation, on the ground that he was a fellow-servant of the pilot in charge. The Titan, being in fault, is answerable for the whole damage caused him, and the liability of the Titan is not a mere joint liability with the Hills, though both are found in fault. The Titan, for its tort, is severally liable for the whole damage. *The Atlas,* 93 U. S. 302; *Chartered Mercantile Bank* v. *Netherlands, etc.,* 9 Q. B. Div. 118; 10 Q. B. Div. 521, 546. The defense that Briggs was a fellow-laborer with the pilot of the Hills, even if possible to the Hills, would be no defense to the several liability of the Titan. In having to pay Briggs for his injuries, the Titan sustains damages by the collision to that extent, as much as if the injury were to cargo on board the Titan or the Hills, for which she was bound to pay; and as this injury arose from the fault of both vessels, the Hills must answer over for half of what the Titan is obliged to pay; and the Titan, being answerable for the whole damage, has a right to require the Hills to pay one-half of what she will be obliged to pay to Briggs on account of the common fault of both. *The Eleanora,* 17 Blatchf. 88–105; *The Hudson,* 15 FED. REP. 162, 164; *The Canima,* 17 FED. REP. 271, 272; *The C. H. Foster,* 1 FED. REP. 733. There is no evidence of any personal negligence on the

part of Briggs. He was not assigned to duty as lookout, so far as appears; and he was apparently engaged in other duties. It was not his business to leave the duties assigned him and to act as lookout without orders.

A decree for the plaintiff must therefore be entered for $3,000, the stipulated damages, in the usual form, with costs. The fact that less than the value of the Hills is recovered, does not oust the court of jurisdiction of this proceeding to limit liability. The claim made was much greater than her value; and there may, also, be other claims hereafter presented.