## THE TOMMY.

### (District Court, S. D. New York. December 4, 1905.)

SHIPPING—RIGHT TO LIMITATION OF LIABILITY—DEFICIENCY OF VESSEL IN EQUIPMENT.

    The owner of a barge is not entitled to a limitation of liability for the death of an employé engaged in discharging a cargo of rails, which resulted from the fact that the vessel lacked the necessary equipment for handling the rails and the master borrowed and used a set of tongs, which were worn and unfit for use, although warned of their defective condition; it not appearing that such owner had delegated power to any competent person to provide the vessel with proper equipment to render her seaworthy for the service in which she was engaged.

    [Ed. Note.—Limitation of shipowner's liability, see note to The Longfellow, 45 C. C. A. 387.]

In Admiralty. Petition for limitation of liability.

James J. Macklin, for libellant.
Charles C. Sanders and Herbert C. Smyth, advocate, for claimant.

ADAMS, District Judge. On the 25th day of May, 1903, one Charles H. Johnson, while engaged in discharging the cargo of railroad iron of the barge Tommy in the North River at Communipaw Docks, Jersey City, was killed through the alleged negligence of Leah M. Saville, the manager, operator and controller of the barge. Letters of administration were duly issued by the Surrogate of Kings County to Hilma C. Johnson, the widow of the deceased, and she sub-

sequently brought action in the New York Supreme Court, in her own behalf, and for the next of kin, to recover the sum of $25,000, alleging negligence on the part of the said Saville, as the cause of the death. Thereupon, the said Saville brought action in this court to contest and limit her liability under sections 4283, 4284, and 4285 of the Revised Statutes of the United States [U. S. Comp. St. 1901, pp. 2943, 2944] and the acts amendatory thereof, alleging that the death was not caused by design, carelessness or negligence of the petitioner and the same happened without her privity or knowledge and it was entirely owing to the carelessness and negligence of the decedent. The said administratrix, as claimant herein, duly filed an answer to the petition, alleging that the death was caused solely by the negligence and default of the petitioner in failing to furnish said Johnson and others engaged in unloading the lighter with proper, safe and reasonable appliances for carrying on the work of discharging and was occasioned with the privity and knowledge of the petitioner and without any fault or negligence on the part of the deceased.

The testimony showed that the petitioner was the owner and charterer of about 40 vessels, steamboats, barges, &c., which she employed in transporting cargoes about the harbor of New York. The Tommy was partially loaded with iron rails at the foot of Clinton Street, Brooklyn, to be discharged at Dock 7 of the Communipaw Docks and there delivered to the Central Railroad Company of New Jersey. The petitioner was the widow of the original owner of the enterprise and took little personal part in its management, having left that to her son, who died before the accident. When anything was needed on the boats, the masters were expected to go to the New York office and obtain an order for it. They had all to do with such supplies. The master in this case had been on the Tommy nearly 5 years. The only other person on board was an assistant called the mate, who was under the orders of the master. It was the mate's duty to stow any cargo, while the master also worked on the same, generally on the barge, while the mate might be ashore.

A set of tongs was required to handle iron rails of this character. The boat had none and the master went to another boat in the vicinity, also belonging to the petitioner, and borrowed a set. The controversy turns largely upon the condition of such implements, the petitioner alleging that they were in good order and suitable for the work, while the claimant states that they were utterly unfit for it and that the accident to Johnson occurred by reason thereof. The testimony seems to make it clear that the tongs were old and very much worn, so much so that the handles, which in tongs in good condition were kept well apart, constant pressure being thus maintained upon the rails, came close together, leaving practically no pressure upon the rails, with the consequence that the one in question slipped and killed Johnson. These rails were about 30 feet long and weighed some 600 pounds. They were particularly liable to slip because they had been freshly painted and therefore required to be gripped closely

and securely by the tongs. There were from 80 to 100 rails in this cargo and about 60 were safely discharged before this accident happened and there is some testimony to indicate that the remainder of the lot was also discharged in the same manner after the accident. It is contended that such fact shows the tongs were in proper condition but the argument is not very persuasive. There can be little doubt of the defective condition of the tongs and that the accident was principally attributable thereto. The fact that no other accident happened during the discharge was probably due to the fact that all the other rails were so nicely balanced that no great strain came upon the tongs' holding powers, but when it did come, then the defect manifested itself with the fatal result. It is urged that the deceased was himself to blame for the accident because he did not handle the rails properly. It may be that he did not handle them with due care in view of the condition of the tongs. Whether he exercised the necessary amount of caution in view of what he might have seen, it is not necessary to determine here, the question now presented being whether the vessel was seaworthy in her equipment.

It is well settled that a ship owner is not entitled to limit his liability when a loss arises from a defective condition of his vessel, of which he was ignorant because of his negligent examination of her, when under his immediate personal supervision. The Republic, 61 Fed. 109, 113, 9 C. C. A. 386, 390. The court there said:

"A loss is not occasioned without the knowledge or privity of the shipowner, when it arises from his personal neglect to inform himself of the defective condition of his vessel, the vessel being under his immediate personal supervision."

The court also said (page 112 of 61 Fed., page 389 of 9 C. C. A.):

"We do not find it necessary to consider whether a shipowner is denied the protection of the statute whenever the loss has occurred from the unseaworthy or defective condition of his vessel. The warranty of seaworthiness which is always implied on the part of the shipowner holds him to the obligation of providing a vessel which is in all respects reasonably fit for the voyage and employment in which she is to engage. Yet there may be a breach of this obligation without his knowledge, and without his personal negligence. He may have employed a most competent expert to make all necessary examination of the vessel just prior to the voyage, an expert possessing skill and experience far beyond his own, and the expert may have failed to exercise sufficient care to discover defects which ought to have been found. It would be a hard construction of the statute which would deprive the shipowner of protection under such circumstances. Certainly, this case does not require us to consider whether such a construction of it is necessary."

It is said elsewhere, that in equipping a vessel, the owners may avail themselves of the proper facilities common to business men, and be relieved whenever and so far as they have appointed a suitable representative to be master, consignee, or their agent to supervise the vessel either at sea, or in the home port or otherwise. The Warkworth, 9 P. D. 20, 145; Quinlan v. Pew, 56 Fed. 111, 5 C. C. A. 438.

The petitioner here did not, apparently, appoint any one to attend to such matters respecting her vessels. This one was not furnished with appliances for handling iron rails, and when it was found neces-

sary that she should have them, the master went to a neighboring vessel and borrowed an old and worn set, which he caused to be used, notwithstanding that express warning was given to him of its defective condition. Under the common law, it was the duty of the owner herself to see that her employés were furnished with safe sound and suitable tools—Benzing v. Steinway and Sons, 101 N. Y. 547, 552, 5 N. E. 449. In proceedings for the limitation of shipowners' liability, a somewhat different rule prevails in that the duty may be delegated to a suitable person, with the effect of relieving the owner of the burden otherwise imposed upon him, but this case does not seem to fall within the operation of the latter rule. If the master here could be deemed the delegated person, he was clearly unfit to perform the duty and there is nothing to show that the petitioner was entitled to rely upon him in the matter. Though called master, and the deceased called mate, both were laboring in the discharge and not entitled to any supposed knowledge by reason of their positions. That the master actually had none appears from the testimony and must be assumed from his undertaking to use the defective tongs in spite of the warnings he received. Doubtless he supposed no harm would result from their use, but the mere fact of the use showed that he was unfit to be charged with the serious responsibility which should attend the selection of proper tools to be used in the handling of a dangerous cargo.

The exoneration of the owner here is not called for by the spirit or the letter of the law limiting the liability of vessel owners.

The libel will be dismissed.