## THE SOUTHSIDE.

### (District Court, S. D. New York. June 21, 1907.)

**1. SHIPPING—LIMITATION OF LIABILITY—FERRY COMPANY.**

A New York corporation operating a ferry for the carriage of passengers across the East river between Manhattan and Brooklyn *held* entitled to a limitation of its liability for the death of a passenger to the value of the boat on which he was such passenger and its freight, under the provisions of Rev. St. §§ 4283–4285 [U. S. Comp. St. 1901, pp. 2943, 2944].

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 644.

Limitation of owner's liability, see note to The Longfellow, 45 C. C. A. 387.]

**2. SAME—DEATH OF PASSENGER BY FALLING FROM FERRYBOAT—LIABILITY OF VESSEL.**

Claimant's intestate, while a passenger on petitioner's ferryboat, crossing East river from Manhattan to Brooklyn, stood leaning against the gate across the front end of the boat, near the end where the gate was fastened by being let into a four-inch groove at the side rail, when through some movement of his or a lurching of the boat the end of the gate was pulled out from the groove and he fell overboard and was drowned. The evidence showed that the gate was in good repair and that similar gates had been used by petitioner on its boats for many years without accidents. There was also a conspicuous sign near by warning passengers to keep "hands off the gates." *Held*, that petitioner was not guilty of negligence which rendered it liable for the death, but that it was attributable to the negligence of the deceased.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 544, 551.]

In Admiralty. Proceeding for limitation of liability.

Wilcox & Green, for petitioner.

Kantrowitz & Esberg and Franklin Pierce, for claimant.

ADAMS, District Judge. This proceeding was brought by the Brooklyn Ferry Company of New York, the owner of the ferryboat Southside, under sections 4283, 4284, and 4285 of the U. S. Revised Statutes [U. S. Comp. St. 1901, pp. 2943, 2944] and the acts amendatory thereof and supplementary thereto, to have its liability, if any should be found to exist, limited to the value of its interest as said owner in said boat, her tackle, &c., and her freight. In due course a monition was issued and other proper proceedings taken to notify all who had any claims against the vessel to appear and protect their interests. Under this notice Bessie Rabinowitz appeared as adminis-

tratrix of her husband Edward Rabinowitz, deceased, and answered the petition, alleging, inter alia, as follows:

"VII. She denies that the petitioner here is entitled under the provisions of sections 4283, 4284 and 4285 of the Revised Statutes of the United States and the acts amendatory thereof and supplementary thereto to have its liability as owner limited to the amount or value of its interest as owner of said ferry boat, her boilers, engines etc. and her said freight for the said trip or voyage; and alleges upon information and belief that this Court has not jurisdiction of the subject matter of this proceeding and that said sections 4283, 4284 and 4285 of the Revised Statutes of the United States have no application to the facts hereinafter set forth and that this court has no jurisdiction to limit the liability of the petitioner herein and that said sections confer no jurisdiction upon this court to hear and determine this proceeding, and this answer is filed without waiving any right to raise said question of jurisdiction at every point in this case and to contend that this court has no right to hear and determine this matter or to pass upon any questions involved herein.

VIII. She further says upon information and belief that the Brooklyn Ferry Company of New York is and at all times hereinafter mentioned was a domestic corporation duly organized and existing under the Laws of the State of New York and that on the 21st day of November, 1902, Edward Rabinowitz, the husband of this claimant duly purchased of the defendant, a common carrier of passengers between Tenth Street in the Borough of Manhattan, City of New York, and Greenpoint, Borough of Brooklyn, City of New York, at its ferry house at the foot of Tenth Street and East River in the City of New York, Borough of Manhattan, a ticket entitling him to passage from East Tenth Street in said City and Borough to Greenpoint in said City and Borough of Brooklyn across the East River in the City of New York upon its ferry boat designated as 'South Side.' That claimant's said intestate at or near eleven o'clock in the forenoon of said date boarded said boat at East Tenth Street aforesaid, as it had the right to do, and became a passenger of defendant across the said East River. That claimant's said intestate, while crossing said River and while a passenger of said defendant was, as he had the right to do, standing upon the bow or front part of said boat leaning against an upright or post attached to the gates admitting passengers to said boat and through which passengers passed in leaving said boat. That while so standing at said post, and because of the facts hereinafter stated and without any fault upon the part of the claimant's intestate, he fell or was precipitated through said gates into the East River and was drowned. That said boat known as 'South Side' belonging to the defendant was an antiquated boat, had through long years of use become unsafe, insecure and decayed, and the means of access to an exit from said boat and its gates and all parts thereof were defective and antiquated and out of repair, and the said boat was unseaworthy and the attachments of said gates to the post against which claimant's intestate was leaning at the time of said accident and to the other post were defective and insecure all through the negligence and carelessness of the defendant. That passengers to the knowledge of defendant were in the habit, prior to said date, of leaning against said post and against said gates, and said gates were negligently and carelessly attached to said posts and were otherwise defective and insecure, and that by reason of the motion of said boat the claimant's intestate was brought into contact, without any fault upon his part, with said gates, and with said defective and insecure attachment and because of said insecure attachment and gates and of the defective condition of said gates and because the same were old and insecure and antiquated in form and unfit for the purposes of gates, the same, without any fault on the part of claimant's intestate gave way and allowed claimant's intestate to be precipitated into the East River. That said post and said gates were negligently and carelessly placed by the defendant very near the bow or front part of said boat and so near the front part of said boat that while claimant's intestate was leaning against said post and an ordinary lurch occurred in said boat he was precipitated against said gates without any fault upon his part and the said gates, because of their insecure condition, gave way and because the space between said gates and the end of

said boat was so narrow, as aforesaid, he was precipitated into said River. That by reason of said defective and unsafe condition of said gates and of said boat and said narrow bow of said boat and the decayed and defective condition of said boat, all of which were the result of negligence and carelessness upon the part of the defendant and all of which were in violation of the defendant's duty to its passenger and to claimant's intestate to safely carry him in transit between said points aforesaid the claimant's intestate was thrown into said East River. That upon claimant's intestate being thrown into said River, as aforesaid, it became the duty of the defendant as a common carrier of passengers towards claimant's intestate, a passenger, to use a high degree of care to save the life of claimant's intestate, but in violation of said duty defendant negligently and carelessly failed to stop said boat and negligently and carelessly continued said boat and negligently and carelessly omitted to take proper means to secure the body of the claimant's intestate and as a result thereof claimant's intestate was either drowned or crushed in the wheel of said boat."

The effect of this answer was to traverse the allegations of the petition but apart from some general charges of unseaworthiness there was no proof to show that the boat was unfit to carry passengers on her route, aside from some charges respecting the defective condition of the lattice work iron gate which crossed her bow. Apart from this question, there is no real controversy as to the right of the petitioner to a limitation of liability, and if the petitioner is responsible for the loss of life of the claimant's husband, it is only to the extent of the appraised value of the boat and freight, which was $10,004. The original claim on the part of the widow and next of kin was for $100,-000, but after certain of the proceedings to limit had been taken in this court, the claim was reduced to $10,000.

The facts appear to be that the deceased was a passenger on the Southside on a trip from her Manhattan slip to her Brooklyn slip in the morning of November 21, 1902. She left Manhattan at 10:45 o'clock, the tide being flood. When approaching and near her Brooklyn terminus, about 100 feet from the mouth of her slip, the deceased in some manner went through the forward gate on the port side and overboard and was drowned. It has been suggested on the part of petitioner, that this might have been a deliberate act on his part with a view to suicide, but he was only 28 years of age, apparently happily married, and the testimony is so clear that his circumstances were prosperous, with every prospect of, at least, an ordinarily satisfactory life, that such an idea must be rejected. The cause of his death was no doubt an accident and it is to be determined whether it was a result of the neglect of some duty which the petitioner owed, as a common carrier, to the deceased or resulted from his own negligence, for which the petitioner would not be liable.

The real controversy is about the sufficiency and condition of the gates crossing the bow, the claimant contending that they were old, in a dilapidated condition and generally unfit for the purpose for which they were intended, that was to protect passengers from getting overboard through any mischance which in the ordinary course of things might occur. The petitioner claims, on the other hand, that though put on the bow of the boat for the passengers' protection they were not in any way designed to save them from the results of their own negligence in handling the gates, which they were expressly warned against by a

notice to keep their "Hands off the gates." This gate was constructed in two sections, about 26 feet 'across from rail to rail, which ran in nearly a straight line from the rails to the center of the boat where the sections met and were fastened together. The rail ends ran into grooves, at least 4½ inches deep, on knees supporting the rails. When the gates were open they folded up and remained affixed to a post on each side between the horse gangway and the passenger gangway, one on each side. This accident happened in the passenger gangway on the port side of the boat. The deceased was standing there, leaning against the gate when the accident happened. Several witnesses upon the part of the claimant said that he was not leaning against the gate but the decided preponderance is in favor of the petitioner's contention that he was doing so. The claimant's statements early in the case tend to establish such fact. Her answer to the petition in this connection alleged:

"That claimant's said intestate, while crossing the said river and while a passenger of defendant was, as he had a right to do, standing upon the bow or front part of said boat, leaning against an upright or post attached to the gates admitting passengers to said boat and through which passengers passed on leaving said boat."

This upright or post was a part of the gate, extending somewhat above it, and formed the extreme port end, which went into the socket on the rail. One of the claimant's witnesses on the trial, Mrs. Annie Bolstein, who was examined at the Coroner's inquest, (then named Annie Danzinger) which almost immediately followed the accident, said that the deceased was "leaning on the post where the gate closes * * * against the post." Another witness, Bopp, who was a deck hand on the boat and testified on the petitioner's behalf at the inquest, said the deceased was leaning against the post of the gate which was properly closed and could not be opened even with the expenditure of considerable force except by taking the end of the gate out of the socket. Some witnesses for the petitioner on the trial, members of the crew of the boat, said that the deceased was leaning against the gate. I think the testimony shows that the deceased at the time of the accident was leaning, with his right arm around the upright, with his back against the gate and his left arm stretched across it. An ordinary lurch of the boat occurred or there was some movement of the passenger which caused the gate to open and permit him to go backward through it and overboard.

It appears that these gates were not required by any statute but had been adopted by the petitioner, and other ferry companies, to prevent passengers from sitting upon the bows of boats, with their legs dangling over, an obviously dangerous position, and to act as a barricade to prevent the passengers from leaving before the boats were fastened to the bridges and ready for their safe landing. These gates had been in use for many years but were kept in good order by such repairs as might be needed from time to time, being removed occasionally for such purpose, and other gates, kept on hand with that view, substituted during the repairs. The witness Bopp, who testified in court for the claimant said that the gates in question were in extremely bad order, entirely unfit for use but his statements, if they could have any weight,

were entirely overborne by the testimony of others in the employ of the petitioner. His testimony in court can not be believed in view of what he had previously said and the fact that he evinced on the trial an adverse disposition towards the petitioner. He remained in its employment until immediately prior to the trial and his testimony rather hurts than helps the claimant.

It has been urged that other people leaned against the gate but that seems to be immaterial. When the gates were erected notice was printed in a conspicuous place near them that they were not to be handled. When a passenger did handle them, notwithstanding the warning and came to grief, it seems to have been a case of negligence on his part fully accounting for the accident.

The fact that millions of passengers were carried on this boat and similar ones during a series of years without any accident happening from the use of the gates is strong proof that the petitioner could not anticipate any such trouble as ensued, and is therefore not liable for the result of this accident. Cleveland v. New Jersey Steamboat Co., 68 N. Y. 310; Loftus v. Union Ferry Co. of Brooklyn, 84 N. Y. 455, 38 Am. Rep. 533; Hubbell v. The City of Yonkers, 104 N. Y. 434, 10 N. E. 858, 58 Am. Rep. 522; Race v. Union Ferry Co. of New York and Brooklyn, 138 N. Y. 644, 34 N. E. 280.

The petition is granted but the claim is disallowed. Decree accordingly.