THE HOFFMANS. 455

***

## THE HOFFMANS.

### (District Court, S. D. New York. May 24, 1909.)

SHIPPING (§§ 203, 207, 209*)—LIMITING LIABILITY—ADMIRALTY—JURISDICTION.

A loss to the owner of certain twine was suffered through fire on one of the railroad company's barges, and upon an action being brought against the railroad to recover the damages, the latter instituted proceedings to limit its liability to the value of the barge. The owner of the twine excepted to the petition. The questions involved were: (1) Was a single claim sufficient to give the court jurisdiction? (2) Did the petitioner's bill of lading, providing that water carriage should be subject to certain conditions, operate to prevent the application of the limitation of liability acts? (3) Was the libellant precluded by a stipulation, providing that the agreement might be used in a New York state court from re-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sorting to this court? and (4) Did the Hepburn act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), repeal the provisions of sections 4284–4289, Rev. St. U. S. (U. S. Comp. St. 1901, pp. 2943, 2945), relating to limitation of liability. The first question answered in the affirmative and the others in the negative.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. §§ 203, 207, 209.*

Limitations of owner's liability, see note to The Longfellow, 45 C. C. A. 387.]

(Syllabus by the Judge.)

Wallace, Butler & Brown, for petitioner.

Cravath, Henderson & De Gersdorf, for exceptant, appearing specially to object to the jurisdiction of the court.

ADAMS, District Judge. This is a petition on the part of the New York Central & Hudson River Railroad Company, as owner of the barge Hoffmans, to limit its liability to the value of the barge and freight, ascertained to have been, directly after the disaster, $4,988.22, with respect to a loss by fire in September, 1907, on 3,500 bales of twine, belonging to the International Harvester Company, and shipped by it on the railroad at Auburn, New York, on the 12th of September, 1907, to New York, for export. The value of the shipment was $14,505.37, but it was not all burned and the salvage having been deducted, there remained a sum of $12,286.57, which represented the loss on the twine by reason of the fire and the Harvester Company now seeks to recover that sum from the petitioner. The loss was therefore considerably in excess of the value of the carrying barge, hence this proceeding.

The Harvester Company having originally excepted to the jurisdiction of the court, the exceptions were overruled on the 12th day of November, 1908, but without prejudice to a renewal of the same and they are again presented as follows:

"First: That the shipment in question is governed by the Interstate Commerce Act to the exclusion of the statutes for limitation of liability named in said petition of New York Central & Hudson River Railroad Company, and this court has therefore no jurisdiction of said petition for limitation of liability.

Second: That in addition to the exclusion of the statutes for limitation of liability by the Interstate Commerce Acts any rights which New York Central & Hudson River Railroad Company might have had under said statutes for limitation of liability were waived and excluded by the contract of shipment, and this court has therefore no jurisdiction of said petition for limitation of liability.

Third: That this cause was already in process of adjudication in a proper State Court; that there was and is no other claimant against New York Central & Hudson River Railroad Company on account of said loss or damage to said lighter; that the State Court was and is competent to give all proper relief, and that this court has therefore no jurisdiction of the matters contained in said petition of New York Central & Hudson River Railroad Company."

In the arguments, however, the parties have proceeded upon somewhat different lines, the Harvester Company covering the grounds of the exceptions, as follows:

"First. That inasmuch as it sufficiently appears before this Court that there is only one claimant in regard to the damage to this barge or its cargo, to

wit, the Harvester Company, and the controversy between that claimant and the petitioner, the Railroad Company, had been actually commenced in a court of competent jurisdiction to determine the same, before the filing of this petition, therefore, under the doctrine enunciated in The Rosa (D. C.) 53 Fed. 132, this Court should dismiss the petition for limitation of liability.

Second. That the Railroad Company, by its contract of carriage, to wit, the bills of lading, has waived its right to take advantage of any claim for limitation of liability.

Third. That the Railroad Company, by its stipulation, has likewise waived its right to take advantage of the jurisdiction of this Court; and

Fourth. That the statutes of limitation of liability are not operative to destroy the rights existing between shippers and carriers created by the so-called Hepburn Act and the statutes governing the conduct of interstate carriers."

1. For a considerable length of time this court entertained the view that where there was but a single claim, the court was without jurisdiction to decree a limitation of liability under Rev. St. U. S. §§ 4284 and 4285 (U. S. Comp. St. 1901, pp. 2943, 2944). The Rosa (D. C.) 53 Fed. 132; The Eureka No. 32 (D. C.) 108 Fed. 672.

Views opposing Judge Brown, however, have been indicated. Judge Thomas in The M. Moran (D. C.) 107 Fed. 526, in quoting from The Rosa, said the expression there used by Judge Brown was not suited to the case then under consideration but:

"If the facts were similar to those presented in The Rosa, the views of the court in that case would not be easily disregarded, notwithstanding contrary holding by the United States Circuit Court of Appeals for the First Circuit in Quinlan v. Pew, 5 C. C. A. 438–446, 56 Fed. 111–120."

Later, in the Eastern district, In re Starin (D. C.) 124 Fed. 101, Judge Thomas held that a shipowner, by defending and appealing an action in a state court to recover damages for injury to a passenger does not waive his right to petition a court of admiralty for limitation of liability, nor is he debarred from the right to invoke the remedy because there is but a single claimant.

In 1907, Judge Brawley in The Lotta (D. C.) 150 Fed. 219, discussed the question quite thoroughly and followed Judge Brown in The Rosa and The Eureka.

Contrary views have been expressed in Quinlan v. Pew (Circuit Court of Appeals, First Circuit) 56 Fed. 111, 5 C. C. A. 438, and by Judge McPherson of Pennsylvania in The S. A. McCaulley (D. C.) 99 Fed. 302.

The law of the question was very fully discussed in Quinlan v. Pew, 56 Fed. 120, 121, 5 C. C. A. 446, and I consider the reasoning there and the result reached much more consonant with sound maritime principles than the contrary ones expressed. It was there said by Judge Putnam:

"The appellant also objects that it appears from the proceedings that the claim of Quinlan is the only outstanding one against the vessel, or owners as owners, and that this fact brings the case within The Rosa, 53 Fed. 132, where it was held that the statute limiting liability does not apply under such circumstances. As already said, the state of the record is as claimed by the appellant; yet this court cannot accept the rules laid down in The Rosa. The statute right to surrender the vessel to a trustee appointed by any court of competent jurisdiction, which in maritime matters necessarily includes the admiralty courts, and to be thus relieved from liability, is protected both by

the letter of the statute and by its reason, whether there are numerous claims outstanding or but one; and the right to have the vessel appraised under admiralty rule 54 is necessarily coextensive with the right to surrender. Indeed, under admiralty rule 56, the owners may bring the entire contest into the admiralty court, even though they finally establish a contention that there are no valid claims whatever. The rule in The Rosa is quite impracticable, as it is frequently impossible for the owners of vessels navigating foreign seas, remote from their personal control, to be assured as to the extent to which they may be subject to 'liens and claims of various kinds. The original act of 1851 § 4, uses both the plural and singular; and there is no such change found in the Revised Statutes as would justify the court in holding that Congress intended any substantial innovation. Indeed the Revised Statutes (section 4285) use both the plural 'claimants,' and the singular, 'person,' thus bringing forward the plural and singular of the original act. The statute was intended for the encouragement of commerce, and would not receive its full effect to the extent given by the Supreme Court in Providence & New York Steamship Co. v. Hill Manuf'g Co., 109 U. S. 578, 588, 589, 3 Sup. Ct. 379, 617, if the owners of a vessel or wreck, under the circumstance of there being but a single claim outstanding, large enough to absorb the entire vessel or her salvage, could be compelled, on the verdict of a jury, to pay perhaps vastly more than her real value, or be forced to the trouble and expense of litigating any issue of that character. The appellant treats the jurisdiction to be exercised under the statute as though governed exclusively by the principles applicable to courts of equity. But with these neither the statute nor the proceedings under it, so far as concerns the admiralty courts, have any relation, except merely incidentally, whenever it happens that the claims are in excess of the value of the vessel or her salvage. In that event the rules of equity procedure come in, not for the purpose of determining the jurisdiction of the court, but only as they relate to proceedings in bankruptcy, or any other proceedings, when marshaling of assets becomes incidentally necessary."

The ruling in the last mentioned case has recently been quite generally followed in this district notwithstanding The Rosa and The Eureka, and numerous instances might be cited where it has been applied but I do not consider it necessary to mention them all. The following will serve as illustrations: The Tommy (D. C.) 142 Fed. 1034, The John K. Gilkinson (D. C.) 150 Fed. 454, and The Southside (D. C.) 155 Fed. 364. The Tommy was appealed and while there was no mention made of the point now under discussion, yet it was clear that there was only one claimant and the case as decided here was reversed because the boat owner was not given the benefit of the statute limiting liability. The Tommy, 151 Fed. 570, 573, 81 C. C. A. 50.

While there can be no doubt that an answer in a state court proceeding often suffices to give an opportunity to present the defence of the limitation of liability provided by the United States Statutes, yet it is manifestly useless where anything in the nature of affirmative relief is necessary. If a person, when confronted with a claim, desires to bring all matters connected with his vessel to a definite determination, he must proceed affirmatively and the only manner in which he can do so is by resorting to a District Court of the United States. Elwell v. Geibel (C. C.) 33 Fed. 71; The Eureka (D. C.) 108 Fed. 672, 673; Elwell v. Bender, 79 Hun, 243, 29 N. Y. Supp. 357. In Oregon R'd & Navi'n Co. v. Balfour, 179 U. S. 55, 56, 21 Sup. Ct. 28, 45 L. Ed. 82, quoting from Providence Steamship Co. v. Manufacturing Company, it was said:

" 'The subject is one pre-eminently of admiralty jurisdiction. The rule of limited liability prescribed by the act of 1851 is nothing more than the old maritime rule administered in courts of admiralty in all countries except England, from time immemorial; and if this were not so, the subject matter itself is one that belongs to the department of maritime law. The adoption of forms and modes of proceeding requisite and proper for giving due effect to the maritime rule thus adopted by Congress, and for securing to shipowners its benefits, was therefore strictly within the powers conferred upon this court; and where the general regulations adopted by this court do not cover the entire ground, it is undoubtedly within the power of the district and circuit courts, as courts of admiralty, to supplement them by additional rules of their own. * * * In promulgating the rules referred to, this court expressed its deliberate judgment as to the proper mode of proceeding on the part of ship owners for the purpose of having their rights under the act declared and settled by the definitive decree of a competent court, which should be binding on all parties interested, and protect the shipowners from being harrassed by litigation in other tribunals. * * *

We see no reason to modify these views, and, in our judgment, the proper District Court, designated by the rules, or otherwise indicated by circumstances, has full jurisdiction and plenary power, as a court of admiralty, to entertain and carry on all proper proceedings for the due execution of the law, in all its parts.' "

The subject was discussed by Judge Morrow in Re Whitelaw (D. C.) 71 Fed. 733, and he held that a court of admiralty was the proper one to enjoin the prosecution of suits in state courts against a shipowner. In his opinion, he said (71 Fed. 736–738):

"But in Re Long Island, etc., Transportation Co. (D. C.) 5 Fed. 599, the section, as amended, came up for consideration, and the question involved in this case arose there, and was directly passed upon. Judge Choate, of the District Court for the Southern District of New York, gave the matter careful investigation, and came to the conclusion that section 720 was limited in its application by what may aptly be termed 'the injunction clause' of the limited liability act, viz.: 'All claims and proceedings against the owner shall cease.' The reasons upon which the learned judge arrived at that conclusion are so clearly stated that I shall quote from his opinion at some length. He says: 'But it is still insisted, as to the restraining order, that, whatever may be the jurisdiction of this court, it is prohibited by Rev. St. § 720. This section is a re-enactment, with some change of language, of the fifth section of the act of March 2, 1793 (1 Stat. 335, c. 22). The question thus raised, so far as it depended on the original statute of 1793, is disposed of so far as this court is concerned, in favor of the power to restrain the suits conformably to the rules of the Supreme Court by the decision in the case of The Oceanus (In re Providence, etc.. Steamship Co.) 6 Ben. 131, Fed. Cas. No. 11,451. * * * The question is whether the introduction of this exception into section 720, as to laws relating to bankruptcy, is to be deemed to take away the power to restrain given in the original act by what has been held to be the necessary implication of the words "after such transfer all claims and proceedings against the owner shall cease," which were re-enacted without change in section 4285. Whatever the effect of section 720, section 4285 effectually deprives the state court before which such claim or proceeding is pending of all jurisdiction. The only question is, on which court is imposed the duty or conferred the power to issue a restraining order, if a restraining order shall be necessary to prevent the plaintiff in such suit from proceeding with his suit? It cannot be supposed that this was to remain on the statute book a mere brutum fulmen, with no power to carry it into effect and see that it was executed. Clearly, as to any suit pending in a federal court, the duty would remain where it was before, and the court in which the limited liability proceeding was pending would issue the restraining order. It would be so unusual and questionable an exercise of legislative power by Congress to make a direction requiring state courts to issue such a restraining order that I think nothing short of the most

explicit declaration of an intent to do so would justify the conclusion that such an intent existed. It is most improbable, too, that the necessary power to carry into effect the grant of exclusive jurisdiction to a court of the United States, clearly intended to be exercised by some authority, should not be conferred upon the court whose jurisdiction and whose suitors are to be defended against interference. It is very likely that the person who framed section 720 overlooked the fact that there was another law in force besides the laws relating to bankruptcy under which the courts of the United States could restrain proceedings already commenced in a state court; but in view of the fact that this other law was embodied in the same revision, that its meaning and force were determined by decisions of the courts, and that it must be presumed to have been re-enacted with the same meaning, I think the change made in section 720 is not sufficient to show an intention to take away anything from the meaning of section 4285. Section 720 has obviously its principal application to the restraint of suits which, but for the injunction, the state court would have jurisdiction to go on with and determine. This is true with regard to suits against the bankrupt, stayed under the bankrupt law, and generally where a party is by the rules of equity entitled to enjoin a defendant from going on with a prior suit. The peculiarity of this case is that the suit stayed is one in which, by the express terms of an act of Congress, the state court is absolutely without jurisdiction to proceed. There are not, therefore, the same reasons of public policy in this case as in the cases more particularly provided in section 720, for prohibiting the issue of the injunction or restraining order. It does not interfere with any exercise of jurisdiction which could otherwise be claimed by the state court, and it is not likely to lead to unseemly conflicts between the federal and the state tribunals, to prevent which is understood to have been the original purpose of this prohibitory legislation. So positive is the language of section 4285 that it may be doubted whether, after the transfer therein provided for, the state court could make any order whatever in the cause, even one restraining the plaintiff from its further prosecution. On the whole, therefore, construing the two sections together, I think this court may still restrain, by its order pending this suit, parties who have commenced actions in the state court from proceeding further therein. * * * The suggestion that the court which first obtains jurisdiction of a matter has the right to go on and determine the cause has no force in a case where, by a valid statute, a court subsequently obtaining jurisdiction is vested with exclusive jurisdiction.'"

Assuming that the owner of a vessel can invoke the remedy of the statute in a state court, it is evident that he can only do so effectively by way of defence to the claim or claims involved in a single suit. If he desires to receive the general protection given by the statute, he cannot obtain it otherwise than by resorting to its terms and the rules provided thereunder and, in any event, he is not obliged to adopt that method of a defence. In The Scotland, 105 U. S. 24, 33, 26 L. Ed. 1001, Mr. Justice Bradley said:

"The rules referred to were adopted for the purpose of formulating a proceeding that would give full protection to the shipowners in such a case. They were not intended to prevent them from availing themselves of any other remedy or process which the law itself might entitle them to adopt. They were not intended to prevent a defence by way of answer to a libel, or plea to an action, if the shipowners should deem such a mode of pleading adequate to their protection. It is obvious that in a case like the present, where all the parties injured are represented as libellants or intervenors in the cause, an answer setting up the defence of limited responsibility is fully adequate to give the shipowners all the protection which they need."

The subject was again considered in Providence & N. Y. S. S. Co. v. Hill Mfg. Co., 109 U. S. 578, 594, 595, 3 Sup. Ct. 379, 389, 617, 27 L. Ed. 1038, and the same justice said:

"In promulgating the rules referred to, this court expressed its deliberate judgment as to the proper mode of proceeding on the part of shipowners for the purpose of having their rights under the act declared and settled by the definitive decree of a competent court, which should be binding on all parties interested, and protect the shipowners from being harassed by litigation in other tribunals. Unless some proceeding of this kind were adopted which should bring all the parties interested into one litigation, and all the claimants into concourse for a pro rata distribution of the common fund, it is manifest that in most cases the benefits of the acts could never be realized. Cases might occur, it is true, in which the shipowners could avail themselves of those benefits, by way of defence alone, as where both ship and freight are totally lost, so that the owners are relieved from all liability whatever. But even in that case, in the absence of a remedy by which they could obtain a decree of exemption as to all claimants, they would be liable to a diversity of suits, brought perhaps in different States, after long periods of time, when the witnesses have been dispersed, and issuing in contrary results before different tribunals; whilst in the ordinary cases, where a limited liability to some extent exists, but to an amount less than the aggregate claims for damages, so as to require a concourse of claimants and a pro rata distribution, the prosecution of separate suits, if allowed to proceed, would result in a subversion of the whole object and scheme of the statute. The questions to be settled by the statutory proceedings being, first, whether the ship or its owners are liable at all (if that point is contested and has not been decided), and secondly, if liable, whether the owners are entitled to a limitation of liability, must necessarily be decided by the District Court having jurisdiction of the case; and, to render its decision conclusive, it must have entire control of the subject to the exclusion of other courts and jurisdictions. If another court may investigate the same questions at the same time, it may come to a conclusion contrary to that of the District Court; and if it does (as happened in this case), the proceedings in the District Court will be thwarted and rendered ineffective to secure to the shipowners the benefit of the statute."

If there is more than one forum in which shipowners can obtain relief under the statute, it would seem that the right of selecting the court rests with them. If they wish to proceed in an affirmative manner, they cannot do so except in the District Courts and they must use their machinery to secure full protection.

Section 4284 provides that whenever any loss is suffered and the whole value of the vessel is not sufficient to make compensation to those injured, appropriate proceedings may be taken for the purpose of apportioning the value. It has been held here that the question of the amount of value is unimportant because the vessel or owner may not be liable at all. It was said in The Garden City (D. C.) 26 Fed. 766, 771:

"It occasionally happens that no claims whatever are proved, and sometimes a surplus has arisen, where the claims were less than the proceeds of the vessel sold; but it has never been contended that the decrees in such cases were void. Briggs v. Day, 21 Fed. 727. It is often impracticable, moreover, for the petitioners to know or to ascertain just what the amount of the losses is. It would clearly defeat the purpose of this law if all proceedings must be delayed, and no petition could be filed. until claims were actually presented to the owners in excess of the value of the vessel; or if the owners of the vessel must first make sure that the amount of the actual demands against them was in excess of the value of the vessel.

As stated above, one of the clear purposes of the law is to fix and declare a certain limit of liability; and, as incident to this, to determine whether the vessel is liable at all, and to determine this in a single proceeding, and not leave it to be litigated and possibly determined in contrary ways in as many different suits as there may be different demands. Providence, etc., Co. v. Hill Manuf'g Co., 109 U. S. 593–595, 3 Sup. Ct. 379, 617; In re Long Island Transp.

Co. (D. C.) 5 Fed. 599, 612. Owners should be held entitled to commence these proceedings with reasonable promptness, in order to determine whether they are liable at all, and, if liable, then the extent of that liability, so that they may know speedily their situation as respects the future. The Supreme Court, in providing by rule for the determination of both these questions in this proceeding clearly recognize, as it seems to me, the scope of this law as extending altogether beyond the mere adjustment of pro rata dividends in case of deficiency."

In a case of a single claim, if there is the merest possibility of there being further claims, it would obviously be gross neglect on the part of a shipowner to fail to resort to limited liability proceedings, unless he was satisfied to take the chance of further litigation respecting his vessel. The only way he could fully protect himself would be by availing himself of the provisions of the statutes and the rules made in furtherance of them.

It is well settled that a shipowner can resort to the District Courts at any time before satisfaction of judgment, even after the claim or claims, has been fully litigated in the state courts. The Benefactor, 103 U. S. 239, 26 L. Ed. 351. Notable instances of a final resort to the District Court for limitation, after proceedings in a state court, are: In re Starin, and The S. A. McCaulley, supra. If vessel owners can finally resort to the District Courts to obtain the benefits of the act, it is difficult to see why they are not entitled to at the outset and it seems unjust to require them to determine in the beginning whether or not there is more than one claim. The machinery of the court affords the only adequate method of legally determining that fact and though it may turn out that there was but one outstanding claim and there may be some incidental hardship to a claimant, that seems to me no sufficient reason for depriving a vessel owner of his statutory right.

I conclude that a vessel owner under the circumstances involved in the present case is entitled to resort to limitation proceedings.

2. The second point in the argument made by the Harvester Company is that the Railroad Company has by the bills of lading waived its right to take advantage of any claim for limitation of liability. This claim is based upon the language of the bills of lading, issued by the Railroad Company at Auburn, covering the property, as follows:

"11. If all or any part of said property is carried by water over any part of said route, such water carriage shall be performed subject to the conditions, whether printed or written, contained in this bill of lading, including the condition that no carrier or party shall be liable for any loss or damage resulting from the perils of the lakes, sea or other waters; or from explosion, bursting of boilers, breakage of shafts, or any latent defect in hull, machinery or appurtenances; or from collision, stranding, or other accidents of navigation; or from the prolongation of the voyage. And any vessel carrying any or all of the property herein described, shall have liberty to call at intermediate ports; to tow and be towed, and to assist vessels in distress, and to deviate for the purpose of saving life and property. And any carrier by water, liable on account of loss of or damage to any of said property, shall have the full benefit of any insurance that may have been effected upon or on account of said property."

The exceptant's contention is that the bills of lading constituted a complete contract between the parties as to the liability of the carrier for damages in the course of shipment; that they constituted a waiver

of the privilege of limitation of liability and there is no basis for the jurisdiction of the court.

Paragraph 1 of the bill of lading provided, however, as follows:

"1. No carrier or party in possession of all or any of the property herein described, shall be liable for any loss thereof or damage thereto, by causes beyond its control, or by floods; or by fire; or by quarantine; or by riots, strikes or stoppage of labor; or by leakage, breakage, chafing, loss in weight, changes in weather, heat, frost, wet; or decay; or from any cause if it be necessary or is usual to carry such property upon open cars."

Fire was a matter beyond the control of the railroad and the right of the carrier to limit its liability in such a case seems unquestionable.

There does not appear to be any evidence of an intention on the part of the carrier to waive anything secured to it by agreement or by law. The case of The Satanita, 1897 App. Cas. 59, is however, relied upon by the exceptant. That case was one of express agreement made between yacht owners respecting a club race in which they were about to participate, each owner undertaking to be bound by the club rules which provided that the owner of any yacht disobeying any of the rules was to be liable for "all damages arising therefrom." One of the yachts disobeyed a rule and it was held by the courts, including the House of Lords, that the contract excluded the operation of the English limitation of liability act. In deciding the case it was said by Lord Halsbury, L. C. (page 62):

"On the other hand, I think it cannot be denied that the case of yachts is different from that of merchant vessels. I do not say that such a consideration would be conclusive; but remember that these are competing vessels, and where you are speaking of these first-class yachts competing in a yacht-race you might as well value a race horse by its weight, so many pounds of flesh, as speak of the value of a yacht according to its tonnage. Of course, it may be said in respect to merchant ships also, that that is a very rough test of the value of the ship, and that the object of it is to limit the risk. That is true also; but the conditions under which merchant ships sail and yachts sail are different. Merchant ships must be on the seas at all times and in all weathers, both by day and by night, and it may well be that the considerations that would induce people, so to say, to diminish the stakes upon which they were running their vessels would not be applicable to the case of yachts, which presumably are intended to race in conditions of light and of weather in which they are not exposed to the same risks."

Clearly that case is not an authority for the proposition that the railroad has by its bill of lading waived the right to resort to the act for protection in a case where one of the barges, with cargo, was subjected to danger from fire.

3. The parties prepared a stipulation covering the facts in the case and agreed that it might be used in an action by the Harvester Company in the Supreme Court of the state of New York. The exceptant contends that by doing so the parties submitted the controversy to that court to the exclusion of this one and that the process of this court should not be used to stay the action in the other.

The stipulation provided in its first paragraph as follows:

"First: That, whenever the suit referred to in the caption hereof shall have been commenced in a court of competent jurisdiction (state) in New York county, or (federal) in the Southern district of the state of New York, and not elsewhere, the facts, matters and things herein set forth shall be allowed

to be introduced as evidence in the trial of said cause and this stipulation shall be received for said purpose and shall be received as prima facie evidence of, and in the absence of conflicting evidence as hereinafter provided for, shall be deemed sufficient evidence of the truth of the matters herein set forth; and, further, that neither party shall present evidence either additional to or in conflict with the matters herein stipulated, unless such party shall have first given to the opposite party thirty days' notice in writing setting forth fully the substance of such additional or conflicting evidence."

There is nothing in the stipulation which prevents either of the parties from availing itself of any legal defense, or requiring it to refrain from seeking a limitation of liability under the United States statutes. If the parties had intended anything of the kind, the stipulation should have contained a provision to such effect in unmistakable language.

4. It is urged under this point that the statutes for limitation of liability are not operative to destroy the rights between shippers and carriers created by the so-called Hepburn Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), which provides (section 1) as follows:

"Be it enacted, etc., That the provisions of this act shall apply to any common carrier or carriers engaged in the transportation of passengers or property wholly by railroad or partly by railroad and partly by water when both are used, under a common control, management, or arrangement, for a continuous carriage or shipment, from one State or Territory of the United States, or the District of Columbia, to any other State or Territory of the United States, or the District of Columbia, or from any place in the United States to an adjacent foreign country, or from any place in the United States through a foreign country to any other place in the United States, and also to the transportation in like manner of property shipped from any place in the United States to a foreign country and carried from such place to a port of transshipment, or shipped from a foreign country to any place in the United States and carried to such place from a port of entry either in the United States or an adjacent foreign country: Provided, however, That the provisions of this act shall not apply to the transportation of passengers or property, or to the receiving, delivering, storage, or handling of property, wholly within one State, and not shipped to or from a foreign country from or to any State or Territory as aforesaid. The term 'railroad' as used in this act shall include all bridges and ferries used or operated in connection with any railroad, and also all the road in use by any corporation operating a railroad, whether owned or operated under a contract, agreement, or lease; and the term 'transportation' shall include all instrumentalities of shipment or carriage. All charges made for any service rendered or to be rendered in the transportation of passengers or property as aforesaid, or in connection therewith, or for the receiving, delivering, storage, or handling of such property, shall be reasonable and just; and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful."

It also provided (Act June 29, 1906, c. 3591, § 7, 34 Stat. 595 [U. S. Comp. St. Supp. 1907, p. 909]) as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, That nothing in this section shall deprive any holder of such re-

ceipt or bill of lading of any remedy or right of action which he has under existing law.

Section 10 of the act provides as follows:

"Sec. 10. That all laws and parts of laws in conflict with the provisions of this Act are hereby repealed, but the amendments herein provided for shall not affect causes now pending in courts of the United States, but such causes shall be prosecuted to a conclusion in the manner heretofore provided by law."

It is claimed that the statute for limitation of liability is repealed by these sections of the act.

In the Middle Ages, the doctrine of limitation of liability of the owners of a vessel to their interests in its value and the value of its freight, arose. In The Rebecca, Fed. Cas. No. 11,619, 20 Fed. Cas. 373, decided in the district of Maine in 1831, Judge Ware treats the matter in an exhaustive manner. The first statutes of the United States upon the subject were passed in 1851, and became known as the "Limited Liability Acts." They are found in sections 4282–4289 of the Revised Statutes (U. S. Comp. St. 1901, pp. 2943, 2945). The policy of these acts is explained by Mr. Justice Bradley in Norwich Co. v. Wright, 13 Wall. 104, 121, 20 L. Ed. 585. On the latter page it was said:

"The great object of the law was to encourage shipbuilding and to induce capitalists to invest money in this branch of industry. Unless they can be induced to do so, the shipping interests of the country must flag and decline. Those who are willing to manage and work ships are generally unable to build and fit them. They have plenty of hardiness and personal daring and enterprise, but they have little capital. On the other hand, those who have capital, and invest it in ships, incur a very large risk in exposing their property to the hazards of the sea, and to the management of seafaring men, without making them liable for additional losses and damage to an indefinite amount. How many enterprises in mining, manufacturing, and internal improvements would be utterly impracticable if capitalists were not encouraged to invest in them through corporate institutions by which they are exempt from personal liability, or from liability except to a limited extent? The public interests require the investment of capital in shipbuilding, quite as much as in any of these enterprises. And if there exist good reasons for exempting innocent shipowners from liability, beyond the amount of their interest, for loss or damage to goods carried in their vessels, precisely the same reasons exist for exempting them to the same extent from personal liability in cases of collision. In the one case as in the other, their property is in the hands of agents whom they are obliged to employ."

Under section 4289 of the Revised Statutes, the benefits of the Act of 1851 did not extend to "the owners of any canal-boat, barge, or lighter, or to any vessel of any description whatsoever used in rivers or inland navigation," but by Act June 19, 1886, c. 421, 24 Stat. 80 (U. S. Comp. St. 1901, p. 2945), it was extended to the owners of all vessels. Therefore the case under consideration is clearly covered by the act.

This act constitutes the statutory foundation governing the rights and liabilities of persons engaged in carriage by water.

The Interstate Commerce Act aimed to correct certain abuses in the carriage of goods, principally by land, incidentally by water, but it was certainly not designed to overthrow the long established system of limitation of vessel-owners' liability in connection with water car-

171 F.—30

riage. To suppose so, without any mention of the Act of 1851, would be a perversion of its obvious intent to correct the said abuses. I do not find any merit in the claim.

The exceptions are overruled.