## THE NORTH STAR.

### Petition of BOSTON & YARMOUTH S. S. CO., Limited.

(District Court, D. Massachusetts. February 12, 1925.)

No. 2787.

**Shipping ⬸208—Owner held entitled to limitation of liability for stranding.**

The navigation of a vessel at sea is under the absolute control of her master, and the fact that her owner may have been advised by previous trip reports that the master had violated the rules as to speed in a fog *held* not to charge owner with such privity or knowledge as to preclude its limitation of liability for stranding of the ship in a fog through negligent navigation.

In Admiralty. Petition by the Boston & Yarmouth Steamship Company, Limited, owner of the steamship North Star, for limitation of liability. Granted.

Charles C. Barton, Jr., of Boston, Mass., for petitioner.

Jasper N. Johnson, of Boston, Mass., appearing specially, for claimants.

MORTON, District Judge. This is a petition for the limitation of liability brought by the owner of the passenger steamship North Star. It was fully heard in open court. The facts are as follows:

The North Star was a passenger steamer about 300 feet long, plying between Boston and Yarmouth, N. S. On the morning of August 8, 1919, she stranded in a fog on Green Island, 6 or 7 miles south of the entrance to Yarmouth Harbor, and became a total loss. She had on board at the time about 300 passengers; but fortunately there was no loss of life. The damage claimants, by whom the petition is opposed, are Mabel F. Dempsey, who was a passenger on the North Star and was, as she says, injured by being thrown from her berth by the impact of the collision, whose claim is for personal injuries, and her husband, J. Fred Dempsey, whose claim is for loss of consortium.

The North Star had been duly inspected and certified by the United States Steamboat Inspection Service in April preceding the accident. There is affirmative testimony that she was in every respect staunch and seaworthy and properly manned, equipped, and supplied. There is no testimony, and indeed no serious contention, to the contrary, and I find such to have been the fact.

The North Star left Boston on what proved to be her last trip shortly after 1 p. m. on August 7th. During the afternoon she ran into fog, which continued more or less through the night, and in the early morning, as she approached the Nova Scotia coast, was thick. The course from Boston to Yarmouth is a little north of east by the compass, and the distance is about 235 miles. About 90 miles from Boston is a ledge on which there is a buoy, which the North Star duly picked up. Her next mark was the Lurcher Lightship, about 16 miles from Yarmouth; i. e., about 130 miles from the buoy. At the time this lightship was temporarily off its station, and a whistling buoy had been substituted. About 6 a. m. on August 8th, it being dense fog, the master and. the pilot of the North Star heard what they took to be this buoy abeam about 2 miles northward; they did not see the buoy, nor attempt to see it. The wind was fresh from the south, and the sea was rough, conditions which might well have caused them to doubt whether the buoy would be audible so far to windward of it. A sounding of 43 fathoms was reported, which, according to the chart, indicated a position near the buoy. The steamer was thereupon put at full speed and so remained until the breakers on Green Island were sighted, two or three ship lengths away. The disaster was then inevitable.

In fact, the steamer had come onto the coast 6 or 7 miles to the south of her assumed position. According to the chart there was not 43 fathoms, nor anything like it, at the point where she must have been when she sounded and then went ahead the last time. The buoy which her master and chief pilot mistook for the Lurcher buoy was in all probability the Southwest buoy, and she must have passed a short distance to leeward of it.

There was nothing unusual in the conditions which the steamer encountered on this trip; nothing to excuse such a wide error in her course as actually occurred. It stands unexplained and is sufficient evidence of negligence in her navigation.

The damage claimant opposes the petition upon the ground that the owner was not free from personal fault for the disaster and therefore has no right to limit its liability, while the petitioner denies that Mrs. Dempsey was injured in such a manner as to make it responsible. These are the two remaining questions for decision.

At the end of each trip the master handed into the owner's office a report card showing, inter alia, the times of departure and arrival, the weather conditions, whether foggy or not, and perhaps the engine speed.

Capt. Strout had been on 11 similar trips in this steamer, and each time had passed in such a card. It does not appear on how many of these trips fog was encountered, nor to what extent, if at all, he reduced speed because of it.

The damage claimant contends that these report cards showed that he customarily did not reduce speed in fog; that the owner was thereby apprised of this custom; that, as the owner did not object to Capt. Strout's practice, it inferentially approved it; and that it was therefore personally at fault for the steamer's failure to slow down at the time in question.

I have great doubt whether the evidence establishes the facts necessary to the damage claimant's argument. See Deslions v. La Compagnie Générale Transatlantique, 210 U. S. 95, 123, 28 S. Ct. 664, 52 L. Ed. 973. But, assuming it does, I am of opinion that the owner was not personally at fault for the disaster. The navigation of a vessel at sea is under the absolute control of her master. He has to hold a government license for fitness, and his powers and duties are to a large extent regulated by law. He is responsible for the proper navigation of the vessel. See The Styria, 186 U. S. 1, 9, 22 S. Ct. 731, 46 L. Ed. 1027, for a strong statement of the master's position and duties, and Judge Hale's discussion of them in The Kronprinzessin Cecilie (D. C.) 228 F. 946, 957. I doubt whether an owner on the bridge would have any right to give an order against the master's; there cannot be two captains on the same vessel. No decision has come to my attention in which an owner was held personally at fault for a master's error in navigation at sea. To warrant doing so it must appear either that the owner was in reality in command of the vessel, or that the negligent acts were ordered or directed by him. It was said in The Oneida (C. C. A.) 282 F. 238: "The knowledge or privity that excludes the operation of the statute must be in a measure actual, and not merely constructive. It must be actual, in the sense of knowledge or authorization, or immediate control of the wrongful acts or conditions, or through some kind of personal participation in them." Manton, J., at page 241. See, too, The Alola (D. C.) 228 F. 1006; The Longfellow, 104 F. 360, 45 C. C. A. 379.

There is nothing uncommon in the facts here relied upon to establish fault on the owner; they would probably apply to most steamers in passenger service; and the practical effect of holding the owner personally

at fault would be to abrogate the Limitation of Liability Act (Comp. St. §§ 8020–8027) as to passenger vessels. Such a result violates the purpose of the act. It should be construed, "not narrowly, but in a fair and liberal manner, to effectuate the evident intention of Congress." Rogers, J., The 84 H. (C. C. A.) 296 F. 427. "We very much appreciate the danger that the act should be cut down from its intended effect by too easy a finding of privity or knowledge on the part of owners." Holmes, J., Capitol Transp. Co. v. Cambria Steel Co., 249 U. S. 334, 39 S. Ct. 292, 63 L. Ed. 631.

I find and rule that the petitioner is shown to have been free from personal fault for the accident.

The evidence leaves me in great doubt whether Mrs. Dempsey could have been thrown from her berth by the impact of the collision, as she says. Her examination on this point was very brief—too brief to do justice to her case. The case may stand for further hearing on this point, and, unless the evidence on damages is extensive, it may be heard at the same time.