**TIMUR FISHING CORP.**

v.

**CAP'N BILL, Inc.**

**Nos. 56–51, 56–60.**

United States District Court
D. Massachusetts.

March 14, 1958.

Joseph F. Dolan, Boston, Mass., for plaintiff.

William T. Conlan, Ely, Bartlett, Thompson & Brown, William H. Diamond, Boston, Mass., for defendant.

ALDRICH, District Judge.

At noontime on August 28, 1956 there had been for two days on Georges Bank

a particularly heavy fog. Of the various witnesses who testified on the subject none put the visibility at over 100 feet, and some placed it at 50. In spite of this the scalloper Mary & Julia was proceeding easterly, towing her drags, with no lookout, at speeds variously put between three and six knots, and signalling only every four or five minutes, and the scalloper Cap'n Bill was proceeding NNW to make a new set with no lookout, and giving no signals at all. Aboard each two deck-hands were engaged in tending to the scallops, and were paying only casual, if any, attention to their vessel's progress. The rest were off watch, or eating, below. On the Mary & Julia the mate was at the wheel, and in charge of navigation. The Cap'n Bill was on automatic pilot, and the mate in the pilot house was watching the fathometer to obtain a favorable bottom. He had a radar, but was not using it. The two vessels discovered each other simultaneously when they were a boat length or less apart. Each put her helm over, and the Cap'n Bill, having pilot house control, was put into reverse, but there was no time for these maneuvers to affect the direction or speed of either vessel. The stem of the Cap'n Bill penetrated the starboard quarter of the Mary & Julia head on. The blow caused her to sink in a matter of minutes. Her crew was saved. The Cap'n Bill was not damaged. The owner of the Mary & Julia brings this libel for her loss, in which the members of her crew intervene for loss of their personal effects. The owner of the Cap'n Bill counters with a petition to limit.

■ I find that the right to limit has been established; that the Cap'n Bill was in all respects seaworthy, and that the owners were not privy to her negligent handling. There was testimony that her automatic pilot was somewhat noisy in operation. I find it was no noisier than any other such pilot. I would certainly not find that it made a vessel unseaworthy to have an automatic pilot aboard. The fact that it might be improper to use it under particular con-

ditions, absent knowledge on the part of the owner that such violations customarily occurred, does not affect petitioner's right to limit. With regard to her radar, I find that there was a blind spot of 8–10°, but that this is not at all unusual. I would not find a scalloper unseaworthy because she had no radar at all. Anglo-Saxon Petroleum Co., Limited, of London, England v. United States, D.C.D.Mass., 88 F.Supp. 158; but cf. The T. J. Hooper, 2 Cir., 60 F.2d 737, certiorari denied Eastern Transp. Co. v. Northern Barge Corp., 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571. Therefore I would not find her unseaworthy to have a radar that was less than 100% perfect, so long as its limitations were apparent and known. Installation and maintenance difficulties would have been involved to have placed the radar screen so that no blind spot existed. From a practical standpoint, particularly on a small vessel, compromise is often necessary. A vessel does not have to be perfect to be seaworthy. Doucette v. Vincent, 1 Cir., 194 F.2d 834.

■ The Cap'n Bill was competently manned. There is one point of conceivable difficulty, namely the absence of a lookout. Admittedly there was no special lookout man employed by the owners with that sole duty. On a small vessel this would be impractical. Either deckhand on watch could have been assigned to that position when needed. I do not face the problem which might exist if respondent had proved that there was a custom on board the Cap'n Bill known to the owners not to post any lookout. See discussion in The Silverpalm, D.C.N.D. Cal., 13 F.Supp. 212, at pages 214–215, affirmed 9 Cir., 94 F.2d 776, certiorari denied United States v. Silver Line, 304 U.S. 576, 58 S.Ct. 1046, 82 L.Ed. 1539. Cf. The North Star, D.C.D.Mass., 3 F.2d 1010.

■■ This brings me to the question of liability. Both vessels admit that they were at fault, as they must. The only question is whether the damage shall be divided, or whether the Mary & Julia is to be exonerated under the doc-

trine of major and minor fault. For this purpose I will review briefly the various departures shown from proper standards of conduct. Neither vessel had a lookout. On the Mary & Julia the mate in charge of the pilot house was attempting so to serve. This was insufficient. The Orion, 1 Cir., 26 F.2d 603. On board the Cap'n Bill no one was acting. The Cap'n Bill was sounding no fog signals, and even if I accept the testimony of the Mary & Julia to the full, hers were quite inadequate. The latter testified that she was giving a three-second blast, and two short blasts, every four to five minutes. This was a partial attempt to comply with the towing signal, Rule 15, International Rules, 33 U.S.C.A. § 145m(c) (v). The towing rule requires a prolonged blast, (four to six seconds, Rule 1, 33 U.S.C.A. § 144(c) (xi)), followed by two short blasts, at least once a minute. In fact, although, strictly, she was towing, the drag cables went under water immediately alongside, and offered no obstruction to navigation. There is a separate signal for a vessel fishing—a blast once a minute, followed by the ringing of a bell. Rule 15, 33 U.S.C.A. § 145m(c) (ix). Probably the latter rule applied. However, in any event in two substantial respects the Mary & Julia failed to comply with either.

A good deal of time was spent on how fast each vessel was proceeding, and whether it was excessive, and the causal effect of the absence of a lookout. Obviously, in a dense fog a vessel could be going so fast that the most careful lookout would not provide adequate visual warning. Conversely, no matter how moderate the speed, a collision might be inevitable if no one was paying attention. It seems to me pointless to consider the reciprocal extent to which both these faults here contributed, or whether only one did, to the exclusion of the other. However one views it, both vessels were playing Russian roulette, gambling on the fact that the sea was large, and themselves very small. Under no circumstances can the faults as to signals be overlooked. The court is personally sympathetic with the crewman who testified that the sound of his foghorn never made him nervous—it was the absence of it.

It is only with the greatest of reluctance that I would say that this total number of prolonged, serious, and deliberate faults under such obviously adverse conditions are to be excused as minor. Even applying liberally the minor fault rule, see Seaboard Tug & Barge, Inc., v. Rederi AB/Disa, 1 Cir., 213 F.2d 772; Avila v. The Madonna Di Trapani, D.C.D.Mass., 122 F.Supp. 272, I am not tempted to do so.

The case will be referred to a commissioner for ascertainment of damage. In this connection, if material to certain arguments suggested by the parties, I find that the Cap'n Bill was proceeding at 5–6 knots.